CHASE LUMBER AND FUEL COMPANY, INC., Plaintiff-Respondent,

v.

Frederic CHASE and Helen Chase, Defendants-Appellants,

SOO LINE RAILROAD COMPANY, Defendant. [Case Nos. 98–0532, 98–0620]

Frederic L. CHASE, and Helen B. Chase, Plaintiffs-Co-Appellants,

HESSLINK LAW OFFICES, S.C., Appellant,

v.

CHASE LUMBER AND FUEL COMPANY, INC., Defendant-Respondent.

CHASE LUMBER AND FUEL COMPANY, INC., Plaintiff-Respondent,

v.

Frederic L. CHASE, and Helen B. Chase, Defendants-Co-Appellants,

HESSLINK LAW OFFICES, S.C., Appellant,

SOO LINE RAILROAD CO., Defendant. [Case No. 98–1887]

Court of Appeals

*Nos. 98–0532, 98–0620, 98–1887. Submitted on briefs February 4, 1999.—Decided April 15, 1999.*

179

(Also reported in 596 N.W.2d 840.)

On behalf of the defendants-appellants/plaintiffs-co-appellants/defendants-co-appellants and the appellant, the cause was submitted on the briefs of *Robert M. Hesslink, Jr.* of *Hesslink Law Offices, S.C.* of Verona.

On behalf of the plaintiff-respondent/defendant-respondent, the cause was submitted on the brief of *Allen A. Arntsen* and *Michael S. Heffernan* of *Foley & Lardner* of Madison.

Before Eich, Roggensack and Deininger, JJ.

DEININGER, J. Fredric Chase appeals an order and a judgment for specific performance requiring him to convey several parcels of land to the Chase Lumber

and Fuel Company (the Company), as specified by an option to purchase contained in a lease between Chase and the Company.[1] Chase also appeals a subsequent order enforcing that judgment. Chase's attorney, Robert Hesslink, appeals an order requiring Hesslink to pay the Company $3,480 in attorney fees as a sanction for continuing a frivolous defense against the enforcement of the court's judgment. We affirm the trial court's judgment and orders.[2]

The Company also requests an award of attorney fees under RULE 809.25(3), STATS., contending that Chase's appeal of the order to enforce the judgment is frivolous. We conclude that Chase's appeal is not so meritless as to be frivolous, and we therefore deny the Company's request for attorney fees for that appeal. We conclude, however, that the Company is entitled to additional attorney fees for defending Hesslink's appeal of the trial court's award of attorney fees. We remand so that the trial court can modify its award of attorney fees accordingly.

## BACKGROUND

In 1991, the Company took over a lumber yard that had been operated by Chase DeForest, Inc. Fredric

---

[1] Fredric Chase's wife, Helen B. Chase, is also a named party by virtue of her marital property interest in the land at issue here. We will refer to Fredric and Helen Chase collectively as "Chase," except where it is necessary to separately identify them.

[2] Chase filed separate appeals of the order granting specific performance (No. 98–0532), the judgment based on that order (No. 98–0620), and the trial court's order enforcing the judgment (No. 98–1887). Additionally, in No. 98–1887, Attorney Hesslink appeals the order awarding attorney fees. We consolidated these appeals in our order of August 7, 1998.

Chase was a stockholder of Chase DeForest, Inc., and he owned or leased from railroad companies several parcels of land on which the lumber yard operated. The Company purchased the lumberyard assets owned by Chase DeForest, Inc. The Company would have purchased the land from Chase as well, but title to the land was unclear. As an alternative to an outright purchase, the Company leased the land from Chase with an option to purchase individual parcels. The lease required Chase to resolve the uncertainties in the title to the land, and to attempt to acquire those parcels that were owned by the railroad companies. The option required Chase to assign to the Company his interest in any leases of railroad-owned parcels to which he was unable to acquire title.

Numerous title problems persisted through the first years of the lease. In 1993, a descendant of a former owner of one of the railroad parcels claimed reversionary ownership of a portion of the leased land, and later sued to evict the Company and Chase. In 1994, the Company notified Chase that:

> Because of the question of ownership of certain properties we are leasing from you, we shall make the lease payments to the escrow account until the ownership question is resolved. Hopefully you will get the problem resolved soon.

The Company deposited all further lease payments into its lawyer's trust account until 1997, when it notified Chase that it intended to exercise its option to purchase the leased land. The Company's "Notice of Exercise of Options" indicated that, pursuant to the terms of the lease, Chase had fourteen days to provide the Company with a current survey of the parcels and a

title insurance commitment as evidence of Chase's title to the parcels. Chase did not respond to the notice.

The Company sued Chase, seeking specific performance of the option to purchase. Chase counterclaimed, seeking eviction.[3] Chase also notified the Company that it was in default on the lease. The lease allowed the Company to cure the default within ten days, and the Company paid Chase $42,670 in back rent within that time. Both parties moved for summary judgment, which the trial court denied. After a trial to the court, the court dismissed Chase's eviction action and granted judgment for the Company, requiring Chase to comply with the option to purchase. The court ordered that a closing take place within thirty days. The trial court denied Chase's motion to stay the judgment pending appeal.

A few days before the scheduled closing, the Company and Chase disagreed on the language in an indemnification agreement, and a misunderstanding arose about the legal description of the property to be conveyed. The Company's counsel contended that a certain "parcel F" had been erroneously omitted from the warranty deed prepared by Chase's counsel. Chase's counsel contended that Chase was not required to convey parcel F, and he refused to modify the deed to include it. The Company offered to close in escrow, but Chase's counsel refused.

Within a week, attorneys for the parties had reached agreement about the indemnification agreement. The attorneys had also resolved the misunderstanding about the extent of the property to

---

[3] Chase also filed a separate eviction action on October 13, 1997 (No. 97–SC–11535). The trial court ordered that case consolidated with the Company's suit for specific performance (No. 97–CV–2004).

be conveyed. As it turned out, two small parcels had been referred to as "parcel F," and both parcels had been included (one by deed, one by lease assignment) in the documents prepared by Chase's attorney. With the disputed issues resolved, the Company attempted to reschedule the closing. Chase's attorney refused, contending that Chase had tendered performance as required by the court, that the Company had refused to accept the tender, and that, accordingly, Chase had no further obligation under the court's judgment. Chase filed a new eviction action.[4] The Company filed a "Motion to Enforce the Judgment of Specific Performance" with the trial court and sought attorney fees for bringing the motion and defending the new eviction action.

The trial court took testimony regarding the events at the aborted closing and granted the Company's motion, ordering that a new closing take place the next day. After a hearing on the Company's request for attorney fees, the trial court concluded that Chase's attorney's refusal to reschedule the closing was "done in bad faith just to continue this litigation." The court awarded the Company $3,480 in attorney fees, to be paid by Hesslink alone.

Chase appeals the order and the judgment granting specific performance and the order to enforce the judgment. Hesslink appeals the award of attorney fees.

---

[4] That eviction action (No. 98–SC–4377) is not before us in this appeal.

189

## ANALYSIS

*I. The order and judgment for specific performance.*

■ Both parties filed motions for summary judgment as to whether the Company was entitled to specific performance. Both parties contend on appeal that they were entitled to summary judgment in the trial court. Generally, when both parties move by cross-motions for summary judgment, it is the equivalent of a stipulation of facts permitting the trial court to decide the case on the legal issues. *See Millen v. Thomas*, 201 Wis. 2d 675, 682–83, 550 N.W.2d 134, 137 (Ct. App. 1996). Although the trial court denied both motions for summary judgment and decided the case after a trial to the court, the parties now agree that the "evidence introduced at trial was consistent in all significant respects with the evidence submitted by the parties in support of their respective summary judgment motions." Thus, the material facts are undisputed, and the appeal of the order and judgment for specific performance presents only legal issues.

■ Specific performance is an equitable remedy and rests in the discretion of the court. *See Anderson v. Onsager*, 155 Wis. 2d 504, 513, 455 N.W.2d 885, 889 (1990). However, "unless in the course of a trial court's exercise of discretion there are revealed factual or legal considerations which would make specific performance of the contract unfair, unreasonable or impossible, specific performance of a contract to sell land should be ordered as a matter of course." *Id.* at 512–13, 455 N.W.2d at 889. The question then, is whether the option to purchase the leased property matured into an

190

enforceable contract to sell land. The interpretation of written documents, such as the lease and the Company's "Notice of Exercise of Options," is a question of law, subject to de novo review. *See Foursquare Properties Joint Venture I v. Johnny's Loaf & Stein*, 116 Wis. 2d 679, 681, 343 N.W.2d 126, 127 (Ct. App. 1983). We conclude that Chase was obligated to sell the property to the Company, and that the trial court properly awarded specific performance.

### a. Forfeiture of the option to purchase.

Chase contends that the Company forfeited its option to purchase the property because it breached a material term of the lease by failing to timely pay the rent directly to Chase. Specifically, Chase argues that the Company forfeited the right to exercise the option because: (1) the express terms of the lease so provide; and (2) the Company violated the covenant of good faith and fair dealing implicit in every contract, thus excusing Chase from his obligation under the contract. We reject both arguments.

We consider first the express terms of the lease. Chase argues that the Company's failure to pay rent directly to Chase violated an express condition of the lease, and that Chase was not obligated to honor the option to purchase by virtue of the "no waiver" clause of the lease.[5] The Company acknowledges that it violated a term of the lease by failing to pay rent directly to

---

[5] Paragraph 22.5 of the lease provides, among other things, that "[n]o delay or omission by either party hereto to exercise any right or power accruing upon any noncompliance or default by the other party with respect to any of the terms hereof, or otherwise accruing hereunder shall impair any such right or power or be construed to be a waiver thereof."

Chase, but it contends that the option clause was still valid because the failure to pay rent was not, in itself, a default as defined in the lease. The Company's interpretation of the lease is correct.

The option clause provides that it may be exercised "[d]uring the continuation of this Lease, including extensions or renewals." Articles 17 and 18 of the lease specify the conditions under which Chase could terminate the lease, and thereby terminate the option to purchase. Article 18 of the lease specifies that Chase can terminate the lease "[u]pon the occurrence of any of the events of default set out in Article 17." Article 17 provides, in relevant part:

> Article 17: Default of Lessee
> The following events shall be deemed to be events of default by Lessee under this Lease:
> (i) Lessee shall fail to pay any installment of the rent due hereunder and such failure shall continue for a period of ten (10) days after Lessee's receipt of written notice of such default from Lessor.

The Company did not default under the terms of the lease because the Company paid the accumulated rent to Chase within ten days of receiving written notice of the potential default from Chase.

■
Chase contends that under Article 22.5 of the lease (see n.5, above), his failure to notify the Company of its potential default does not preclude him from refusing to honor the option to purchase, even if he was not entitled to terminate the lease. Chase relies on *Hafemann v. Korinek*, 266 Wis. 450, 456, 63 N.W.2d 835, 838–39 (1954), in which the supreme court held that a landlord's acceptance of late rent constituted a waiver of the landlord's right to terminate the lease, but that the landlord could nevertheless refuse to

honor an option to purchase contained in the lease. *Hafemann* is inapposite, because in that case, the option clause expressly provided that "such option to purchase shall be effective only if the lessees pay the rent punctually." *Id.* at 452, 63 N.W.2d at 836. Here, the only condition precedent to the exercise of the option clause is that it be exercised "[d]uring the continuation of this Lease, including extensions or renewals." There is no dispute that the company exercised the option during the continuation of the lease. Thus, we conclude that under the express terms of the lease, the Company did not forfeit the right to exercise the option.

Chase next argues that the Company forfeited its right to exercise the option to purchase by violating the covenant of good faith and fair dealing implicit in every contract. Chase relies chiefly on our opinion in *Bozzacchi v. O'Malley*, 211 Wis. 2d 622, 566 N.W.2d 494 (Ct. App. 1997), in which we held that tenants who had habitually paid their rent late had forfeited their right to exercise an option to purchase the leased property.

In *Bozzacchi*, an option to purchase real estate was granted on the condition that "[b]uyer shall rent [the property] for $650[ ] per month beginning June 1, 1994." The option further provided that "[b]uyer and seller will enter into a rental agreement as of closing of [a related piece of property]."[6] The buyers and sellers entered into the rental agreement, but the buyers did not pay their rent on time—the rent for April through

---

[6] Our opinion in *Bozzacchi v. O'Malley*, 211 Wis. 2d 622, 566 N.W.2d 494 (Ct. App. 1997), cited the significant terms of the option to purchase, though not the specific language we cite here, which can be found in the Appendix of the Brief of the Plaintiff-Appellant at 141–42 (No. 97–0086, on file at State Law Library).

September 1995 was not paid until October 1995. The sellers did not honor the option to purchase. The buyers contended that they had complied with express terms of the option, which conditioned the option on the entry into a rental agreement, but did not expressly condition the exercise of the option on the timely payment of rent. We rejected the buyers' claim, concluding that their untimely rent payment breached the covenant of good faith and fair dealing implicit in every contract. *See id.* at 626, 566 N.W.2d at 495–96 (citing *Chayka v. Santini*, 47 Wis. 2d 102, 107 n.7, 176 N.W.2d 561, 564 (1970)). We reasoned that in entering into the rental agreement, the buyers had complied only with the form of the option contract, but by paying rent extremely late, they had failed to comply with the substance of the agreement. " 'Compliance in form, not in substance' breaches that covenant of good faith." *Id.* (citation omitted).

██ The facts of *Bozzacchi* are distinguishable from the facts of this case. The buyers in *Bozzacchi* paid their rent late without reason and without notice to the sellers. Here, the Company had a reason to withhold rent and it provided notice to Chase that it was doing so. The Company withheld its rent only after a putative owner of one of the railroad parcels sued to evict the Company, which raised a reasonable concern as to whether Chase was complying with his obligation under the lease to make a diligent effort to acquire title to the railroad parcels. Moreover, the Company did not simply withhold rent, but paid it to its lawyer's trust account, thereby ensuring that the accumulating rent would be available to Chase whenever he resolved the title to the leased premises. The Company's conduct does not amount to the "arbitrary and unreasonable

conduct" that constitutes a breach of the implicit duty of good faith in the performance of a contract. *Cf. Foseid v. State Bank*, 197 Wis. 2d 772, 796, 541 N.W.2d 203, 213 (Ct. App. 1995). We thus conclude that the Company did not breach its duty of good faith and fair dealing with Chase.

*b. Unconditional acceptance of the terms of the option to purchase.*

Chase next contends that the Company did not unconditionally accept the terms of the option to purchase, but added conditions not contained in the option itself. He argues that without an unconditional acceptance, he was not bound to convey the property to the Company.

Chase correctly states the law: an option to purchase real estate binds the seller only if the buyer unconditionally accepts it. As the supreme court explained in *Hafemann v. Korinek*, 266 Wis. 450, 458, 63 N.W.2d 835, 840 (1954):

> An option binding an owner of real estate to sell on certain terms constitutes an offer. In order that a contract may result therefrom there must be an unconditional acceptance of such offer by the optionee. If, in his notice of election to exercise the option, the optionee includes a demand for perform- ance outside of the terms of the option that would impose an additional burden on the optionor, such notice is not deemed to be an acceptance of the offer but instead constitutes a counter-offer.

A counteroffer may be properly rejected by the seller. *See id.* The question then is whether the Company's "Notice of Exercise of Options" demanded performance

195

outside the terms of the option clause of the lease. We conclude it did not.

Chase contends that the Company's notice demanded more favorable terms than those offered in the option clause in three respects. First, according to Chase, the Company demanded conveyance by warranty deed of all parcels, whereas the option clause allowed Chase to convey the railroad parcels by assigning the leases to the parcels to the Company. Second, Chase contends that the Company demanded a current survey, whereas the option clause allowed Chase to provide any satisfactory legal description, which he had already provided at the inception of the lease. Third, Chase contends that the Company required Chase to conduct an environmental audit, a requirement not contained in the option clause of the lease. We reject all three of Chase's contentions.

The option clause of the lease provided that once the Company provided written notice of its intent to exercise the option, Chase

shall then within fourteen (14) days provide [the Company] with (a) a current survey of the parcel(s) or other legal description satisfactory to [the Company's] counsel, and (b) evidence of title in the form of a title insurance commitment in the amount of the above-designated price(s) issued by a reputable title insurance company licensed to write title insurance in the State of Wisconsin, and showing merchantable title subject only to recorded easements and municipal and zoning ordinances. The closing shall be held within thirty (30) days after the date of exercise unless delayed by a defect of title, which [Chase] shall promptly remedy. Conveyance is to be by warranty deed, free and clear of

all liens and encumbrances except recorded easements and municipal and zoning ordinances.

In the event either or both of the railroad parcels (D and E above) cannot, after diligent effort and a bona fide fair price offer, be acquired by [Chase], then the [Company] may exercise this option as to such parcels by electing to take over one or both railroad leases by assignment from [Chase]. If such election is exercised, [Chase] shall obtain any necessary consent from the railroad(s) for assignment.

The Company's "Notice of Exercise of Options" indicated that "[p]ursuant to Article 21 of the Lease between" Chase and the Company, "Lessee hereby notifies Lessor of Lessee's intention to exercise its options on Parcels A through E." The notice also contained the following:

Pursuant to such option provision, [Chase] is required within fourteen (14) days to provide [the Company] with (a) a current survey of the parcels, and (b) evidence of title in the form of a title insurance commitment in the amount of the purchase price issued by a reputable title insurance company licensed to write title insurance in the State of Wisconsin, and showing merchantable title subject only to recorded easements and municipal and zoning ordinances. . . .

The Lease specifies that the closing shall be held in thirty (30) days after the date of exercise of the option unless delayed by a defect title, which [Chase] shall promptly remedy. Conveyance is to be by warranty deed, free and clear of all liens and encumbrances except recorded easements and municipal and zoning ordinances . . . .

[Chase] will need to immediately contact the railroads about obtaining title to the two separate 11 foot strips, and [Chase] should order an environ-

mental audit on the premises for delivery to [the Company].

We consider first the Company's requirement that the property be conveyed by warranty deed, which, we note, is contained in both the option clause and the "Notice of Exercise." The requirement of the warranty deed is qualified in the option clause by the paragraph that acknowledges that Chase does not own the railroad parcels. The option provision requires him to attempt to acquire those parcels, and to assign his leases to the parcels if he cannot. The "Notice of Exercise" also implicitly qualifies the requirement of the warranty deed in that it requests Chase to "immediately contact the railroads about obtaining title" to the parcels, thus acknowledging that Chase does not own the parcels, and cannot necessarily convey them by warranty deed. Thus, contrary to Chase's argument, the facts here are not "squarely within the court's reasoning" in *Link Wholesale Grocery v. Krause*, 257 Wis. 207, 43 N.W.2d 25 (1950). In *Link Wholesale Grocery*, the supreme court concluded that the buyers had attempted to extract more than sellers had agreed to deliver. Here, the Company's "Notice of Exercise," when read as a whole, plainly acknowledges that Chase did not own the railroad parcels and cannot fairly be read as a "demand" to convey those parcels by warranty deed.

We consider next the Company's requirement that Chase provide a current survey. The option clause in the lease provides that once the Company provides notice that it intends to exercise its option, Chase must provide a current survey or another legal description of the property "satisfactory to [the Company's] counsel." We reject Chase's contention that the Company is obliged to accept as satisfactory the legal description

appended to the lease. Throughout this entire matter the legal description of the property to be conveyed and title to it has been problematic. If, at the time the Company exercised its option, it no longer found the original description satisfactory, the plain language of the option clause allows the Company to insist on an alternative. The terms of the option clause granted to the Company the sole power to determine what legal description is satisfactory, and if only a current survey met its requirements, then Chase was obliged to provide it.

We consider finally the language in the "Notice of Exercise" stating that "[Chase] should order an environmental audit on the premises for delivery to [the Company]." The term "should" can express various meanings, including "duty, obligation, necessity, propriety or expediency." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2104 (1993). We conclude that in the context of the "Notice of Exercise," the term "should" represents a suggestion as to how Chase might facilitate the transaction, not a condition on the Company's exercise of its option. In the first paragraph of the notice, the Company unequivocally expresses its intent to exercise its option as "enumerated in . . . Article 21" of the lease. The notice does not expressly impose any additional condition on the Company's exercise of the option beyond those conditions enumerated in the lease itself. The statement that Chase "should order an environmental audit" is combined in a single sentence with the statement that Chase "will need to immediately contact the railroads." We conclude that both statements in this sentence are advisory, and that they suggest means of facilitating the transaction, without imposing mandatory conditions on the sale.

199

In sum, the Company's "Notice of Exercise of Options," when taken as a whole and read reasonably, requires no more of Chase than does the option clause. We conclude, therefore, that the Company's notice unconditionally accepted the offer to purchase embodied in the option clause of the lease, and that upon the Company's acceptance, the option clause matured into a contract for the sale of the property. We see no factual or legal considerations which would make specific performance of the contract unfair, unreasonable or impossible. *Cf. Anderson v. Onsager*, 155 Wis. 2d 504, 512–13, 455 N.W.2d 885, 889 (1990). Accordingly, we conclude that the trial court did not abuse its discretion in ordering specific performance requiring Chase to sell the property to the Company, and we affirm the court's judgment.

## II. The "Order to Enforce Judgment."

Chase also appeals the trial court's "Order to Enforce Judgment," which the court issued after the first court-ordered closing fell through and Chase refused to reschedule the closing. He offers three arguments in support of this appeal; none are persuasive.

Chase contends first that the Company's "Motion to Enforce Judgment" was actually an improper motion to extend the time in which the judgment could be enforced. He argues that under § 806.23, STATS., and Wisconsin case law interpreting that statute, an extension of time to enforce a judgment cannot be granted by motion, but must be sought in a new "action on the judgment." We reject this argument, and conclude that § 806.23 is not applicable to this case.

When a judgment becomes unenforceable, a judgment creditor may file an "action on the judgment" in

order to obtain a new, enforceable judgment.[7] Section 806.23, STATS., limits the filing of such actions by requiring a showing of good cause: "No action shall be brought upon a judgment rendered in any court of this state between the same parties, without leave of the court, for good cause shown, on notice to the adverse party." We explained the purpose of the good cause requirement in *Andersen v. Kojo*:

> The purpose of the "good cause" requirement is to protect the debtor from harassment when there is no reason to believe a later judgment will be more effectively collected than the earlier. However, the plaintiff can meet the "good cause" requirement by showing that an action on the judgment is necessary to enforce his or her rights. In [*First Wisconsin National Bank v.*] *Rische*, [15 Wis. 2d 564, 568, 113 N.W.2d 416, 418–19 (1962),] the supreme court held that the plaintiff had met the good cause requirement by showing that the twenty-year statute of limitations on the judgment was about to expire and that plaintiff would thereafter be barred from issuing execution or obtaining leave to act on the judgment. In *Meier v. Purdun*, 70 Wis. 2d 1100, 1106, 236 N.W.2d 262, 265 (1975), the court held that the plaintiff had met the good cause requirement by showing that the ten-year judgment lien period . . . had expired, so that the action was necessary to enforce the plaintiff's lien.

*Anderson v. Kojo*, 110 Wis. 2d 22, 25, 327 N.W.2d 195, 196 (Ct. App. 1982) (additional citations omitted).

---

[7] A judgment creditor's ability to enforce a judgment is subject to various time limitations. *See, e.g.*, § 806.15(1), STATS. (docketed judgment is lien on real estate for ten years from date of entry); § 815.04, STATS. (execution may issue within five years after rendition of judgment).

Chase contends that *Ingraham v. Champion*, 84 Wis. 235, 54 N.W. 398 (1893), applies to the Company's "Motion to Enforce Judgment," and that the holding of that case bars the court from issuing an order to enforce the judgment awarding specific performance. In *Ingraham*, the supreme court held that a money judgment that had expired by virtue of the statute of limitations was unenforceable and could not be renewed *by motion*. A party seeking to collect under such a judgment must obtain a new judgment, via "an action at law, on leave of court." *See id.* at 238, 54 N.W. at 399. Chase contends that in this case, just as in *Ingraham*, the plaintiff had failed to enforce the judgment "during the allotted time."

*Ingraham* has no application to the present facts. The "action on judgment" statute exists to revive expired or expiring judgments, not to enforce freshly entered ones. The issue there concerned the effect of the statute of limitations on a money judgment. Nothing in *Ingraham*—or in any case cited by Chase—prevents a party who has been unable to enforce a judgment for specific performance by a court-imposed deadline from moving the court for a new order with a new deadline. Under Chase's interpretation of *Ingraham* and § 806.23, STATS., if a defendant refused to comply with a judgment for specific performance until the court's deadline passes, then the plaintiff would have to start a new action to enforce the judgment. Chase's interpretation of § 806.23 is absurd, and we reject it.

Chase contends next that the trial court lacked authority to hear the Company's motion, because the

judgment for specific performance had been appealed.[8] Chase contends that §§ 808.07(2) and 808.075(4), STATS., "set forth the limited authority of a circuit court during the pendency of an appeal." Citing *Hengel v. Hengel*, 120 Wis. 2d 522, 524, 355 N.W.2d 846, 847, (Ct. App. 1984), *partly superseded by statute, as noted in Schmidt v. Smith*, 162 Wis. 2d 363, 370, 469 N.W.2d 855, 857 (Ct. App. 1991), Chase contends that, during an appeal, a trial court's authority is limited to "insubstantial and trivial" matters that do not include entertaining a motion to enforce the judgment. We disagree.

Chase misreads § 808.07, STATS., by overlooking subsection (1) of the statute. A trial or appellate court *may* "stay execution or enforcement of a judgment or order" under § 808.07(2)(a), but the general rule is that the enforcement of a judgment is *not* stayed pending appeal. Section 808.07(1), provides:

> An appeal does not stay the execution or enforcement of the judgment or order appealed from except as provided in this section or as otherwise expressly provided by law.

Chase petitioned the trial court for a stay of enforcement, which was denied. Chase did not seek a stay from this court. Accordingly, under § 808.07(1), the judgment was enforceable during this appeal, and we

---

[8] Chase sometimes phrases his argument in terms of the circuit court's "jurisdiction" pending appeal. As we noted in *Hengel v. Hengel*, 120 Wis. 2d 522, 524, 355 N.W.2d 846, 847 (Ct. App. 1984), *partly superseded by statute, as noted in Schmidt v. Smith*, 162 Wis. 2d 363, 370, 469 N.W.2d 855, 857 (Ct. App. 1991), the issue is more properly phrased as a question of the court's statutory authority or competence.

see no reason why the trial court could not proceed as it did to order enforcement of its judgment.

We considered a similar situation in *Community National Bank v. O'Neill*, 157 Wis. 2d 244, 458 N.W.2d 385 (Ct. App. 1990). In that case, a party challenged the court's authority to issue an order confirming a foreclosure sale while the foreclosure order itself was on appeal. We concluded that the trial court had the authority to issue the subsequent order enforcing the judgment, reasoning that

> sec. 808.07(1), STATS., authorizes the court to act in aid of execution of a judgment. That section makes clear that an appeal does not stay the execution or enforcement of a judgment. If the circuit court cannot take action necessary to execute a judgment, then the appeal has effectively created a stay.

*Id*. at 247, 458 N.W.2d at 386. The same rationale applies here. If we were to conclude that the trial court did not have the authority to hear a motion to enforce a judgment of specific performance, we would allow a defendant effectively to force a stay pending appeal by simply refusing to comply with the judgment. We conclude, therefore, that the trial court retained authority to hear the Company's motion and to issue orders necessary to enforce the judgment it had entered.

Chase's final contention is that the trial court erred in entering the "Order to Enforce Judgment" because he had complied with the court's original judgment when he tendered conveyances of the property at closing, which the Company refused to accept. He asserts that the deeds and assignments that he offered at the closing complied word-for-word with the court's judgment. Thus, Chase argues that under contract law

principles, the Company's refusal of his unconditional tender of performance excuses him from further obligation. *See, e.g., Guy F. Atkinson Co. v. Internal Revenue Serv.*, 814 F.2d 1388 (9th Cir. 1987). We reject this argument for two reasons.

First, Chase was obligated under the court's judgment, and not merely by contract, to convey the lumberyard land to the Company. The principles of contract law do not determine a party's rights and duties under a judgment, even if the underlying cause of action is in contract. *Cf. Conway v. Division of Conservation, DNR*, 50 Wis. 2d 152, 158, 183 N.W.2d 77, 80 (1971). Chase has cited no case law holding that an unconditional tender and an unjustified refusal terminates an obligation under a court's judgment, and we have found none.

Second, and more important, Chase's contention that he unconditionally tendered performance is contrary to the trial court's finding of fact, which it made after hearing testimony on the Company's motion. We must uphold the trial court's factual finding unless it is clearly erroneous. *See* § 805.17(2), STATS. According to the trial court, "[t]he transaction did not occur because the parties disagreed as to the language of the deed and assignment." This finding is amply supported by the record, and is not clearly erroneous. On the day of the closing, Chase's attorney wrote to the Company's counsel that "Parcel F was not ordered to be conveyed by the court, and the option was not exercised by your client. It will not be added to the deed." Chase's attorney made similar statements at the closing itself. According to undisputed testimony from David Chase, president of the Company, the Company offered to close in escrow, but Chase's attorney refused. Thus, Chase did not unconditionally tender performance because he was

205

unwilling to address the apparent description error. Chase's position at closing was, essentially, "here's my deed, take it or leave it, even if there are questions regarding the proper legal description to employ." The Company's refusal to close on Chase's terms was justified given the disagreement and confusion regarding the legal description of the property to be conveyed.[9]

■■■

We conclude that the events at closing did not relieve Chase of his obligation to comply with the judgment, and that the court properly issued the Order to Enforce Judgment, which we now affirm.

*III. The trial court's award of attorney fees to the Company.*

Hesslink appeals the trial court's award of $3,480 in attorney fees to the Company, to be paid by Hesslink. The trial court concluded that the defense proffered by Hesslink to the Company's motion to enforce judgment was frivolous under § 814.025,

---

[9] The confusion at the aborted closing regarding the proper description to carry out the terms of the option was well warranted. While the Company's notice of exercise only mentions parcels A through E, it appears that the option to purchase may have been revised to add a "parcel F" some time after the initial execution of the lease. Moreover, two parcels were at different times referred to as "parcel F": (1) the (revised) lease refers to a 24-foot private crossing over the railroad right of way as parcel F, and (2) the title insurance commitment refers to a 27' x 30' gap between parcel A and parcel E as parcel F. (The latter parcel was also sometimes referred to as "no man's land" prior to the closing.)

STATS., and that Hesslink, not Chase, was responsible for the frivolous defense.[10]

A finding of frivolousness under § 814.025, STATS., requires the trial court to find one or both of the following:

> (a) The action, special proceeding, counterclaim, defense or cross complaint was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
>
> (b) The party or the party's attorney knew, or should have known, that the action, special proceeding, counterclaim, defense or cross complaint was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Section 814.025(3), STATS. All doubts should be resolved in favor of finding the claim nonfrivolous. *See Stern v. Thompson & Coates, Ltd.*, 185 Wis. 2d 220, 235, 517 N.W.2d 658, 663 (1994).

The trial court's written order did not detail the reasons for which the Company was awarded attorney fees, rather it cited reasons given in the court's oral decisions at the April 30 and May 28 hearings. At the May 28 hearing on the Company's motion for attorney fees, the court did not expressly indicate whether the finding of frivolousness was based on paragraph (3)(a) or (3)(b) of § 814.025, STATS. Some of the court's com-

---

[10] While it is undoubtedly more common for an attorney to be assessed fees and costs on the basis of § 814.025(3)(b), STATS., an attorney may also be found liable under paragraph (3)(a). *See Elmakias v. Wayda*, 228 Wis. 2d 312, 596 N.W.2d 869 (Ct. App. 1999).

ments suggest that it found Hesslink's defense frivolous under both paragraphs. For example:

> As I say, I don't think there is any reasonable basis in law and fact, and I think it had to be done on bad faith just to continue this litigation so there would—it would never have to be conveyed to the Chase Lumber Company.

On balance, however, we conclude that the trial court based its decision primarily on its conclusions regarding Hesslink's "obstructionist" motives in resisting the court's original judgment, which are relevant to a finding of bad faith under § 814.025(3)(a), STATS. Accordingly, we will review the trial court's order as one based on paragraph (3)(a).[11]

---

[11] The Company's Motion to Enforce Judgment requested "costs and reasonable actual attorneys' fees incurred to bring this motion," but it did not specify the legal basis for the award of attorney fees. In its brief to the trial court, the Company based its request on both § 814.025, STATS., and the court's inherent authority to enforce its orders and punish for contempt. *See, e.g., Belich v. Szymaszek*, 224 Wis. 2d 419, 428, 592 N.W.2d 254, 259 (Ct. App. 1999) ("[I]t is a well-established rule that a trial court has both statutory and inherent authority to sanction a party for failing to comply with procedural rules and for failing to obey court orders."). Contempt proceedings would perhaps have been more appropriate, given that what was at issue was compliance with an existing court order and judgment. Once the trial court determined that Chase lacked good cause for failing to comply with the court's order for specific performance, it could have imposed contempt sanctions. *See* ch. 785, STATS. Sanctions for contempt could include an award of attorney fees to the Company, but Chase, as the contemnor, rather than his attorney, Hesslink, would likely have borne the sanction.

Whether the continuation of a defense is frivolous under § 814.025(3)(a), STATS., is a subjective question: it depends on "what was in the person's mind and were his or her actions deliberate or impliedly intentional with regard to harassment or malicious injury." *Stern*, 185 Wis. 2d at 236, 517 N.W.2d at 663. The trial court must make specific findings on these factual issues based on evidence other than the trial court's appraisal of whether the defense lacks a reasonable basis in law or fact, which is the proper question under paragraph (3)(b). *See id.* at 239, 517 N.W.2d at 665. Our review of the trial court's determination thus involves a mixed question of fact and law:

> The findings by the circuit court of what was said, what was done, what was thought, and reasonable inferences drawn therefrom, are questions of fact. Such findings will not be upset unless they are against the great weight and clear preponderance of the evidence. However, the ultimate conclusion of whether the facts cited fulfill the legal standard of frivolousness is a question of law which we review independently of the conclusions of the circuit and appellate courts.

*Id.* at 236, 517 N.W.2d at 664 (citations omitted).

We conclude that the trial court cited a sufficient factual basis to support its determination that Hesslink's refusal to reschedule the closing and his opposition to the motion to enforce the judgment was in bad faith, solely for the purpose of harassing or injuring the Company. The court cited two actions by Hesslink that the court concluded demonstrated Hesslink's bad faith: Hesslink's refusal to close in

escrow when the Company offered to do so, and Hesslink's filing a second eviction action while the first eviction action was on appeal. The trial court inferred from these actions, that "it had to be done on bad faith just to continue this litigation so there would—it would never have to be conveyed to the Chase Lumber Company." We defer to the reasonable inferences of the trial court. *See id.* Closing in escrow, pending resolution of the points of conflict, would have completely protected Chase's interests in conveying no more property than had been ordered by the trial court. Chase could gain nothing from the second eviction action that could not be gained in the appeal of the first eviction action, which Hesslink had already filed. Thus, we conclude that the trial court made the reasonable inference that Hesslink's purpose in refusing to reschedule the closing and in opposing the motion to enforce the judgment was solely to delay the inevitable legal transfer of the property, thereby harassing or injuring the Company.

We conclude that Hesslink's conduct and motivation, as found by the trial court, meets the legal standard of frivolousness under § 814.025(3)(a), STATS. Accordingly, we affirm the trial court's assessment of attorney fees against Hesslink in favor of the Company.

*IV. Attorney fees on appeal.*

The Company contends that the appeal of the trial court's "Order to Enforce Judgment" is frivolous. The Company asks this court for attorney fees for defending the appeal, as authorized under RULE 809.25(3), STATS.[12] We conclude that Chase's appeal of the "Order

---

[12] We note that RULE 809.25(3), STATS., does not allow us to find that individual arguments in a brief are frivolous. *See Nich-*

to Enforce Judgment" is not frivolous under RULE 809.25(3) and we decline to award attorney fees for the appeal of that order. We conclude, however, that the Company is entitled to actual reasonable attorney fees for defending Hesslink's appeal of the trial court's "Order Awarding Attorney's Fees."

Under RULE 809.25(3), STATS., this court awards attorney fees when it finds one or both of the following:

> 1. The appeal or cross-appeal was filed, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.
> 2. The party or the party's attorney knew, or should have known, that the appeal or cross-appeal was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

RULE 809.25(3)(c), STATS. These conditions parallel the conditions under which the trial court awards attorney fees under § 814.025, STATS.

Although we upheld the trial court's determination that the defense proffered against the "Order to Enforce Judgment" in the trial court was frivolous, we nevertheless conclude that Chase's appeal of that order is not frivolous under RULE 809.25(3), STATS. We upheld

---

*ols v. Bennett*, 190 Wis. 2d 360, 365 n.2, 526 N.W.2d 931, 834 (Ct. App. 1994) *aff'd*, 199 Wis. 2d 268, 544 N.W.2d 428 (1996). We recognize, however, that the matter before us is three consolidated appeals involving several different trial court rulings. In No. 98–1887, Chase filed a notice of appeal of the Order to Enforce Judgment, and Hesslink filed a notice of appeal of the Order Awarding Attorney's Fees. We conclude that each of these constitutes "an appeal" for purposes of RULE 809.25(3), STATS.

the trial court's ruling under § 814.025(3)(a), STATS., because of our deference to the trial court's findings regarding Hesslink's improper motives in resisting enforcement of the judgment in the trial court. Here, the Company bases its claim of frivolousness on RULE 809.25(3)(c)2, STATS., the appellate analog to a claim under § 814.025(3)(b), STATS. Hesslink's motives are thus not at issue. The question under RULE 809.25(3)(c)2, STATS., is whether the appeal of the "Order to Enforce Judgment" is "without any reasonable basis in law or equity and [cannot] be supported by a good faith argument for an extension, modification or reversal of existing law." The standard is an objective one, based on what a reasonable attorney would have, or should have, known under the same or similar circumstances. *See Stern*, 185 Wis. 2d at 240–41, 517 N.W.2d at 665–66.

We have affirmed the trial court's "Order to Enforce Judgment," and we do not consider that decision to have been a close call. Nevertheless, as the supreme court has cautioned:

> "Frivolous action claims are an especially delicate area since it is here that ingenuity, foresightedness and competency of the bar must be encouraged and not stifled." *Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 613, 345 N.W.2d 874 (1984). Many areas of the present law would not have developed without creative and innovative. positions been taken by attorneys for good faith development of the law. *Id.* at 613–614. We also note that an attorney has an obligation to represent his or her client's interests zealously, and that this may include making some claims which are not entirely clear in the law or on the facts, at least when commenced. Thus, when a frivolous action claim is made, all doubts are resolved in

favor of finding the claim nonfrivolous. *See, In Matter of Estate of Bilsie*, 100 Wis. 2d 342, 350, 302 N.W.2d 508 (Ct. App. 1981).

*Stern*, 185 Wis. 2d at 235, 517 N.W.2d at 663. In light of our traditional reluctance to find the legal arguments of counsel frivolous, we cannot conclude that Chase's arguments on the appeal of the "Order to Enforce Judgment" are so lacking in arguable merit as to be frivolous.

This does not end the matter, however. Hesslink's appeal of the trial court's award of attorney fees has forced the Company to incur additional expense in defending those fees. In *Riley v. Isaacson*, 156 Wis. 2d 249, 262–63, 456 N.W.2d 619, 624 (Ct. App. 1990), we concluded that "a party prevailing in the defense of an award of fees under sec. 802.05 is also entitled to a further award on appeal without a finding that the appeal itself is frivolous under RULE 809.25(3), STATS." We reasoned that if the wronged party must bear its own legal costs on appeal in order to defend its award of attorney fees, it may end up substantially worse off for having received the award in the first place. Therefore, a further award of attorney fees under § 802.05, STATS., is necessary to preserve the effectiveness of the remedial purpose of the original award. *See Riley,* 156 Wis. 2d at 262, 456 N.W.2d at 624 (citing *Borowski v. DePuy, Inc.*, 876 F.2d 1339, 1342 (7th Cir. 1989)). Although *Riley* involved a determination of frivolousness under § 802.05, STATS., we conclude that the rationale applies as well to a determination under § 814.025, STATS. Accordingly, we conclude that the Company is entitled to a further award of attorney fees under § 814.025 for its defense of the trial court's "Order Awarding Attorney's Fees."

## CONCLUSION

For the foregoing reasons, the judgment and orders of the trial court are affirmed. We remand for the limited purpose of a determination of the additional attorney fees incurred by the Company in responding to Hesslink's appeal of the trial court's order awarding attorney fees under § 814.025, STATS. Once these additional fees are determined, the trial court should supplement or modify the "Order Awarding Attorney's Fees" accordingly.

*By the Court.*—Judgment and orders affirmed and cause remanded with directions.