ASH PARK, LLC,
Plaintiff-Respondent†,

v.

ALEXANDER & BISHOP, LTD.,
Defendant,

RE/MAX SELECT, LLC,
Intervening-Defendant-Appellant.

Court of Appeals

*No. 2013AP1532. Submitted on briefs June 17, 2014.
—Decided July 22, 2014.*

2014 WI App 87

(Also reported in 853 N.W.2d 618.)

On behalf of the intervening-defendant-appellant, the cause was submitted on the briefs of *Michael O. Marquette* of *Marquette Law – Attorneys, S.C.*, Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *George Burnett* of *Law Firm of Conway, Olejniczak & Jerry, S.C.*, Green Bay.

A nonparty brief was filed by *Debra P. Conrad* of Madison, for Wisconsin REALTORS® Association.

A nonparty brief was filed by *J. Bushnell Nielsen* and *Bridget M. Hubing* of *Reinhart Boerner Van Deuren S.C.* of Waukesha for Ash Investors, LLC.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Re/Max Select, LLC intervened in the underlying lawsuit between Ash Park, LLC and Alexander & Bishop, Ltd., seeking summary judgment against Ash Park for its broker commission. Re/Max also moved to enforce a broker lien it had recorded on Ash Park's property. In response, Ash Park moved for

summary judgment, seeking dismissal of Re/Max's complaint and discharge of the broker lien. The circuit court granted Ash Park's motion.

¶ 2. On appeal, Re/Max argues that, pursuant to the listing contract, it earned its commission and is entitled to summary judgment. We agree. We therefore reverse the circuit court's judgment denying Re/Max its commission. We remand with directions for the court to determine and award Re/Max's broker commission, prejudgment interest, costs, and reasonable attorney fees, pursuant to the listing contract. As for the court's discharge of Re/Max's broker lien, after Ash Park and Re/Max finished briefing, the new owner of the property filed a non-party brief arguing, in part, that even if Re/Max is entitled to a commission, its lien should remain discharged because it was untimely filed. Given the sparse record and Re/Max's lack of an opportunity to respond, we direct the circuit court on remand to determine whether Re/Max's broker lien should remain discharged.

## BACKGROUND

¶ 3. In 2007, Ash Park entered into a one-party listing contract with Re/Max for the sale of property to Alexander & Bishop. The parties used the standard WB-3 vacant land listing contract form approved by the Wisconsin Department of Regulation and Licensing. The contract stated Re/Max would list the property for $6.2 million. It also provided for a six percent commission and stated:

*COMMISSION:* Seller shall pay Broker's commission, which shall be earned if, during the term of this Listing:

1) Seller sells or accepts an offer which creates an enforceable contract for the sale of all or any part of the Property;

2) Seller grants an option to purchase all or any part of the Property which is subsequently exercised;

3) Seller exchanges or enters into a binding exchange agreement on all or any part of the Property;

4) A transaction occurs which causes an effective change in ownership or control of all or any part of the Property; or

5) A purchaser is procured for the Property by Broker, by Seller, or by any other person, at the price and on substantially the same terms set forth in this Listing and in the standard provisions of the current WB-13 VACANT LAND OFFER TO PURCHASE, even if Seller does not accept this purchaser's offer . . . .

¶ 4. In 2007, Alexander & Bishop contracted to purchase the property from Ash Park for $6.3 million to develop as a commercial property. When Alexander & Bishop failed to close on the property, Ash Park brought the underlying suit against Alexander & Bishop, asking the court to enforce the sales contract and order specific performance. Ultimately, the circuit court granted summary judgment in favor of Ash Park and ordered specific performance. We, and then our supreme court, affirmed the circuit court's grant of specific performance. *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2009 WI App 71, ¶ 1, 317 Wis. 2d 772, 767 N.W.2d 614, *aff'd,* 2010 WI 44, ¶ 4, 324 Wis. 2d 703, 783 N.W.2d 294.

¶ 5. Ash Park continued, unsuccessfully, to try and enforce the judgment for specific performance and compel Alexander & Bishop to purchase the property. Ultimately, on December 31, 2010, Ash Park agreed to settle and accepted $1.5 million from Alexander & Bishop in lieu of its purchase of the property.

¶ 6. On January 12, 2011, Re/Max moved to intervene, seeking a judgment against Ash Park for its

broker commission, prejudgment interest, costs, and attorney fees. It also moved to enforce a broker lien it had recorded on the property in October 2009.

¶ 7. Ash Park did not object to Re/Max's motion to intervene, and the court granted Re/Max's request. Ash Park answered Re/Max's complaint, listing numerous affirmative defenses to Re/Max's claim for a commission and right to assert a broker lien on the property. Ash Park then moved for summary judgment, arguing Re/Max was not entitled to a commission because the contract between it and Alexander & Bishop was not "enforceable" and public policy precluded awarding a commission where no sale occurred.

¶ 8. Re/Max opposed Ash Park's summary judgment motion and also moved for summary judgment. Re/Max argued it was entitled to a commission because Ash Park and Alexander & Bishop entered into an enforceable contract, which was evidenced by the fact Ash Park was granted a judgment for specific performance. It also argued the clear and unambiguous terms of the listing contract did not require a sale in order for it to earn its commission and there was no public policy concern.

¶ 9. The circuit court determined the contract between Ash Park and Alexander & Bishop was "enforceable in law" but not "enforceable in fact." It reasoned the contract was not enforceable in fact because, although the court tried, it could not compel Alexander & Bishop to purchase the property. The court explained, "[I]n the end it was the buyer's inability to be able to buy the property, [it] couldn't get financing for [the property], [it] didn't have a deep enough pocket to go to, [it] couldn't do it." Accordingly, the court concluded Re/Max was not entitled to a commission. It granted Ash Park's motion for summary judgment, denied

Re/Max's motion for summary judgment, and ordered Re/Max's broker lien discharged from Ash Park's property.

## DISCUSSION

¶ 10. We review a grant of summary judgment independently, applying the same standards as the circuit court. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 232, 568 N.W.2d 31 (Ct. App. 1997). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2).[1]

### I. Re/Max's commission

¶ 11. On appeal, Re/Max argues it is entitled to its commission because Ash Park and Alexander & Bishop had an "enforceable contract" and the listing contract provides, in relevant part, that a commission is earned when "1) Seller sells or *accepts an offer which creates an enforceable contract* for the sale of all or any part of the Property." (Emphasis added.) Re/Max asserts Ash Park and Alexander & Bishop had an enforceable contract because Ash Park sought, and received, a judgment for specific performance. Re/Max emphasizes specific performance is a remedy that is only available after a breach of an enforceable contract. Re/Max also argues that, given Ash Park's judgment for specific performance in previous cases, Ash Park must be precluded by the law of the case doctrine from arguing the contract is not enforceable.

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

257

¶ 12. Ash Park responds an "enforceable contract" is a contract "that is truly capable of being enforced," and it argues the sales contract was unenforceable because "Alexander & Bishop could not be compelled to perform and purchase the property." It asserts the law of the case doctrine does not apply because it only had a "valid and binding" contract with Alexander & Bishop. Ash Park contends "the Supreme Court announced no conclusion about whether the term 'enforceable contract' means a valid and binding contract, or a contract which the purchaser truly has the ability to perform." Finally, Ash Park argues the term "enforceable contract" is ambiguous, it intended Re/Max to earn a commission only when a sale occurred, public policy requires a broker to earn a commission only when the property is sold, and Re/Max failed to earn a commission because it did not "procure" a buyer.

¶ 13. Here, we must determine whether Re/Max is entitled to a commission under the listing contract. Interpretation of a contract presents a question of law that we review independently. *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App. 1987). "Contract interpretation generally seeks to give effect to the parties' intentions." *Tufail v. Midwest Hospitality, LLC*, 2013 WI 62, ¶ 25, 348 Wis. 2d 631, 833 N.W.2d 586 (citation omitted). However, "subjective intent is not the be-all and end-all"; "unambiguous contract language controls contract interpretation." *Id.* (citation omitted). "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms," and consistent with "what a reasonable person would understand the words to mean under the circumstances." *Id.*, ¶¶ 26, 28.

■

¶ 14. Our inquiry about whether Re/Max is entitled to a commission hinges on the meaning of the term "enforceable contract." When construing a contract, we may look to dictionary definitions to find the common meaning and usage of words. *Ennis v. Western Nat'l Mut. Ins. Co.*, 225 Wis. 2d 824, 832, 593 N.W.2d 890 (Ct. App. 1999). Ash Park emphasizes that the AMERICAN HERITAGE DICTIONARY 592 (4th ed.), defines the term "enforce" as "to compel observance of or obedience to: *enforce a law.*" Re/Max, as well as this court, agrees with this definition of "enforce." Accordingly, a reasonable person would understand an "enforceable contract" as one in which a party may compel another party to observe the agreement. Further, it is well settled that an "enforceable contract" is "one which the law recognizes the parties' rights and protects those rights by providing a remedy for breach." *See* MICHAEL B. APFELD ET AL., CONTRACT LAW IN WISCONSIN § 1.22 (4th ed. 2013).

■

¶ 15. We conclude the term "enforceable contract" is plain and unambiguous. Given the dictionary definition of "enforce" and the principle that an "enforceable contract" is one that provides a remedy for a breach, it is clear that an "enforceable contract" is one where an individual can compel observance of the contract by seeking a remedy for a breach. In this case, the contract between Ash Park and Alexander & Bishop was enforceable—the contract recognized Ash Park's rights under the contract and provided various remedies for Ash Park based on Alexander & Bishop's breach.

¶ 16. Ash Park, however, argues a contract only becomes enforceable if the circuit court can successfully compel the breaching party to comply with a judgment imposing the remedy for a breach. Rather than the

contract being enforceable, it assumes the judgment must be enforced. This argument conflates the *judgment* with the underlying *contract*. The circuit court also appears to have made the same mistake when it determined the contract was "enforceable in law" but not "enforceable in fact" because Alexander & Bishop could not afford to purchase the property.

██

¶ 17. Even assuming Alexander & Bishop could not afford to purchase the property and therefore it could not comply with the court's judgment for specific performance,[2] impossibility is a defense only to the

[2] Re/Max takes issue with the court's determination that Alexander & Bishop lacked the financial ability to purchase the property. It emphasizes that Alexander & Bishop argued to our supreme court in *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2010 WI 44, ¶ 48, 324 Wis. 2d 703, 783 N.W.2d 294, that it was "impossible" for it to perform under the contract because " '[T]he anchor tenant never committed which made it impossible for Alexander & Bishop to get financing and close on the deal.' " Our supreme court, however, observed Alexander & Bishop never asserted impossibility in the circuit court as a defense to specific performance, and Alexander & Bishop never asked the circuit court to determine whether it would be "impossible" for Alexander & Bishop to specifically perform. *Id.*, ¶ 49. The court concluded that it would not consider Alexander & Bishop's impossibility argument because it was being raised for the first time on appeal. *Id.*, ¶ 50. The court noted that if Alexander & Bishop could later prove its alleged financial inability to perform, the circuit court may then modify its judgment under Wis. Stat. § 806.07. *Id.*, ¶ 55 & n.20. It also noted, as an aside, that the judgment of specific performance did not require Alexander & Bishop to finance and develop a shopping mall—it required Alexander & Bishop to purchase a parcel of vacant land. *Id.*, ¶ 53.

Re/Max argues that, on remand, Alexander & Bishop never moved for relief from the judgment and the parties settled the lawsuit. It asserts the lack of a motion from Alexander & Bishop

*remedy* of specific performance. *See Ash Park*, 324 Wis. 2d 703, ¶ 47. The reason impossibility is a defense to the remedy of specific performance is that "a court of equity will not order an impossible act." *Id.*

¶ 18. However, the fact that specific performance is not an available remedy based on equity principles does not mean the underlying contract is unenforceable. Indeed, "[w]hen a buyer breaches a contract, several different remedies may be available to the seller." *Id.*, ¶ 35 (citing 2 CONTRACT LAW IN WISCONSIN §§ 13.1, 13.4 (3d ed. 2007)).

> The seller may seek actual damages, often measured as the difference between the contract price and the value of the property. [2 CONTRACT LAW IN WISCONSIN, *supra,*] § 13.6; *see also* 25 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS, § 66:80 at 8–9 (4th ed. 2002). The seller may select liquidated damages—typically, retention of earnest money. 2 CONTRACT LAW IN WISCONSIN, *supra,* §§ 13.36, 13.62. Finally, the seller may seek specific performance of the contract. *Id.* § 13.53.

*Id.* In this case, the contract between Ash Park and Alexander & Bishop provided:

> If *Buyer defaults,* Seller may:

and the missing evidentiary proof of Alexander & Bishop's financial inability to perform shows the circuit court erred by concluding the judgment was not enforceable based on Alexander & Bishop's purported financial inability to perform. Ash Park responds Alexander & Bishop did not need to obtain "formal judicial confirmation" of the fact that it lacked the money to perform because it threatened bankruptcy and it "provided financial statements showing its near insolvency and letters from lenders declining to provide the funds to purchase this property." Resolution of whether it was "impossible" for Alexander & Bishop to comply with the judgment for specific performance is not germane to our determination of whether Ash Park and Alexander & Bishop had an enforceable contract.

(1) Sue for specific performance and request the earnest money as partial payment of the purchase price; or

(2) Terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) direct Broker to return the earnest money and have the option to sue for actual damages.

Based on the sales contract, other remedies were available to Ash Park for Alexander & Bishop's breach of contract, and the fact that specific performance may have been unavailable does not mean the underlying sales contract was unenforceable.

¶ 19. In addition, as an alternative basis, we conclude the law of the case doctrine applies to prevent Ash Park from arguing the contract it had with Alexander & Bishop was unenforceable. "The law of the case doctrine is a 'longstanding rule that a decision on a legal issue by an appellate court establishes the law of the case, which must be followed in all subsequent proceedings in the trial court or on later appeal.'" *State v. Stuart*, 2003 WI 73, ¶ 23, 262 Wis. 2d 620, 664 N.W.2d 82 (citation omitted). The purpose of the law of the case doctrine is that "courts should generally follow earlier orders in the same case and should be reluctant to change decisions already made, because encouragement of change would create intolerable instability for the parties." *Id.* (citation omitted).

¶ 20. Irrespective of the "valid and binding" term Ash Park currently uses to describe its contract with Alexander & Bishop, the specific performance remedy Ash Park sought and received for Alexander & Bishop's breach in this case was available only if the parties had an *enforceable* contract. *See Anderson v. Onsager*, 155

Wis. 2d 504, 517, 455 N.W.2d 885 (1990) (The court's determination that parties had an "enforceable contract" was a prerequisite to its evaluation of the circuit court's denial of specific performance); *Chase Lumber & Fuel Co. v. Chase*, 228 Wis. 2d 179, 190–91, 596 N.W.2d 840 (Ct. App. 1999) (whether option was "enforceable contract" subject to specific performance); *Padgett v. Szczesny*, 138 Wis. 2d 150, 156, 405 N.W.2d 714 (Ct. App. 1987) (exchange of letters constituted "enforceable contract" to sell real estate under WIS. STAT. § 706.02(1); as a result, court affirmed judgment ordering specific performance); *In re Gabler's Estate*, 265 Wis. 31, 35, 38, 60 N.W.2d 342 (1953) (land contract was a valid and "enforceable contract" entitling the remedy of specific performance); *see also* CONTRACT LAW IN WISCONSIN, *supra*, § 1.22; 25 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 67:2 (4th ed. 2002) ("In an action for the specific performance of a contract, the first requirement is the existence of a valid, legally enforceable contract."). Based on the specific performance judgment Ash Park sought and received in this case, Ash Park cannot now argue its contract with Alexander & Bishop was unenforceable.[3]

¶ 21. We also reject Ash Park's argument that public policy requires a sale in order for the broker to earn a commission. In support of its assertion, Ash Park

---

[3] We observe that, although the case is the same, the disputing parties have changed as a result of Re/Max's intervention. It is unclear whether the law of the case doctrine requires identity between the parties. However, given the fact that Re/Max intervened in the case between Ash Park and Alexander & Bishop, which is the case where Ash Park sought and received a judgment for specific performance, we cannot now conclude the sales contract between Ash Park and Alexander & Bishop was unenforceable. To do so would undermine the previous court decisions in this case.

cites Wis. Admin. Code REEB § 16.02(3) (May 2014). That regulation states that an "exclusive right to sell listing" means "a written listing contract making a broker the exclusive agent for the sale of property for a specific period of time, and which *entitles the listing broker to a commission if the property is sold* by the owner, by the broker, or by anyone else." (Emphasis added.) Ash Park argues that administrative regulations express public policy, and, because REEB § 16.02(3) contemplates a sale, public policy requires a sale for a broker to earn a commission.

¶ 22. However, we have "consistently recognized that parties are free to contract and ha[ve] endeavored to protect the right to contract by ensuring that promises will be performed." *Sonday v. Dave Kohel Agency, Inc.*, 2006 WI 92, ¶ 53, 293 Wis. 2d 458, 718 N.W.2d 631. "A declaration that the contract is against public policy should be made only after a careful balancing, in the light of all the circumstances, of the interest in enforcing a particular promise against the policy against enforcement." *Id.* (quotation omitted). "Courts should be reluctant to frustrate a party's reasonable expectations without a corresponding benefit to be gained in deterring 'misconduct' or avoiding inappropriate use of the judicial system." *Id.* (quotation omitted).

¶ 23. Here, Ash Park and Re/Max entered into a Department-approved WB-3 Listing Contract that explicitly provided, in part, Re/Max earns a commission if Ash Park entered into an "enforceable contract" with a buyer. Nothing in the listing contract requires that a sale must occur before the broker earns a commission. Ash Park's single citation to the administrative definition of "exclusive right to sell" does not support a conclusion that the listing contract is void for public

policy reasons. If Ash Park wanted a commission to be earned only on a completed sale, Ash Park could have negotiated for that provision in the listing contract. It did not.

██ ██

¶ 24. We also reject Ash Park's argument that Re/Max did not earn a commission because Ash Park intended Re/Max to earn a commission when the property was sold. "[U]nambiguous contract language controls contract interpretation." *See Tufail*, 348 Wis. 2d 631, ¶ 25. Here, the contract unambiguously provides that Re/Max earned a commission if Ash Park entered into an enforceable contract.

¶ 25. Finally, we reject Ash Park's argument that Re/Max failed to earn a commission because it did not "procure" a "ready, willing and able purchaser[.]" Under the WB-3 Listing Contract, a broker may also earn a commission if it "procure[s]" a buyer. However, nothing in the listing contract requires a broker to satisfy more than one standard to earn a commission. Accordingly, whether Re/Max "procured"[4] a buyer is irrelevant to the question of whether the seller accepts an offer that creates an enforceable contract.

---

[4] We observe that "procured" is not limited to a ready, willing, and able purchaser. According to lines 164–167 of the listing contract, a purchaser is "procured"

> *when a valid and binding contract of sale is entered into between the Seller and the purchaser* or when a ready, willing and able purchaser submits a written offer at the price and on substantially the terms specified in this Listing. A purchaser is ready, willing and able when the purchaser submitting the written offer has the ability to complete the purchaser's obligations under the written offer.

(Emphasis added.)

¶ 26. In summary, we conclude Ash Park and Alexander & Bishop had an enforceable contract, which in turn means Re/Max earned its commission under the listing contract. We therefore reverse the circuit court's determination that Re/Max is not entitled to its commission and remand with directions that the court determine and award Re/Max its commission, prejudgment interest, costs, and reasonable attorney fees, as provided in the listing contract.

## II. Broker lien

¶ 27. When the circuit court determined Re/Max was not entitled to its commission, it ordered the broker lien discharged from Ash Park's property. On appeal, Re/Max simply asks this court to reinstate the broker lien. In response to Re/Max's request, Ash Park notes in a footnote that it no longer owns the property and that it notified the buyer and title insurer of Re/Max's request. This prompted the new owner of the property, Ash Investors LLC, to move to intervene.

¶ 28. We denied Ash Investors' motion to intervene, but permitted it to file a non-party brief. After Ash Park and Re/Max finished their briefing, Ash Investors filed its non-party brief. Ash Investors argues, in part, Re/Max's lien was properly discharged because Re/Max filed its notice of intent to claim a lien and notice of lien almost two years after the statutory deadlines set forth in Wis. Stat. § 779.32.

¶ 29. Given the timing of Ash Investors' non-party brief, Re/Max has not had the opportunity to respond to Ash Investors' argument about the timeliness of Re/Max's lien documents. Further, because the circuit court simply discharged the lien after determining Re/Max was not entitled to a commission, the court

did not address any arguments about the lien and the record is unclear about whether, or to what extent, there is a factual dispute about when Re/Max's broker lien documents were filed—although it appears the lien documents may have been filed in October 2009. Given the sparse record and Re/Max's lack of an opportunity to respond, it is more appropriate for the circuit court on remand to determine, based in part on its factual determinations, whether Re/Max's broker lien should remain discharged.

*By the Court.*—Judgment reversed and cause remanded with directions.