[Cite as *Premier Health Partners v. NBBJ, L.L.C.*, 2015-Ohio-128.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

PREMIER HEALTH PARTNERS, et al.          :

      Plaintiffs-Appellees          :          C.A. CASE NO.    26143

v.          :          T.C. NO.    13CV3874

NBBJ, LLC, et al.          :          (Civil appeal from
                                    Common Pleas Court)

      Defendants-Appellants          :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____16th_____ day of _____January_____, 2015.

. . . . . . . . . .

NEIL F. FREUND, Atty. Reg. No. 0012183 and SHANNON K. BOCKELMAN, Atty. Reg. No. 0082590, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
      Attorneys for Plaintiffs-Appellees

LUTHER L. LIGGETT, JR., Atty. Reg. No. 0004683 and DAVID M. SCOTT, Atty. Reg. No. 0068110, 10 West Broad Street, #1320, Columbus, Ohio 43215
      Attorneys for Defendant-Appellant NBBJ, LLC

KIMBERLY A. KYLE, Atty. Reg. No. 0072574, 201 E. Fifth Street, Suite 800, Cincinnati, Ohio 45202
      Attorney for Cincinnati Insurance Company

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    This matter is before the Court on the Notice of Appeal of NBBJ, LLC ("NBBJ"), filed March 25, 2014. NBBJ appeals from the March 18, 2014 decision of the trial court that granted summary judgment in favor of Premier Health Partners ("PHP") and Miami Valley Hospital ("MVH") (together, "Plaintiffs") on Plaintiffs' "Complaint for Declaratory Judgment and Breach of Contract."   We hereby affirm the judgment of the trial court.

{¶ 2}    Plaintiffs filed their complaint against NBBJ on June 28, 2013.   The complaint alleges that  NBBJ and "[PHP], dba [MVH]," entered into a Contract, effective May 29, 2007, for the construction of the "Heart Patient Tower," a "440,000 square foot inpatient facility on the existing [MVH] downtown campus," ("the Project").   According to the complaint, the "Project consisted of both demolition and building new construction." Pursuant to the Contract, the Plaintiffs alleged, NBBJ "was to, inter alia, develop the design of the Project and create drawings and specifications for the construction of the Project." The complaint further alleges the following facts:

* * *

9.   Under the Contract, NBBJ was also to administer the contract construction, keep [PHP], dba [MVH] * * * informed as to the progress and quality of the construction work performed, endeavor to guard [MVH] from defects and deficiencies, and determine if the construction work was being performed in accordance with the construction documents, including drawings and specifications.

10.   Pursuant to Section 12.10.1 of the Contract, NBBJ was also

required to maintain a policy of commercial general liability insurance with policy limits not less than $1,000,000 each occurrence and $2,000,000 aggregate for bodily injury and damage to property.

11. Pursuant to Section 12.10.1 of the Contract, [MVH] was to be included under NBBJ's commercial general liability insurance policy as an additional insured to the extent of contractual liability assumed by NBBJ. The policy was required to contain a severability of interests provision in favor of [MVH].

12. Upon information and belief, NBBJ failed to include [MVH] as an additional insured under its commercial general liability insurance policy and/or failed to obtain an insurance policy sufficient to comply with the Contract.

13. Pursuant to Section 12.9.1 of the Contract, NBBJ is obligated to hold [MVH] and its officers, employees, and successors harmless from and against all damages, losses, and judgments, including reasonable attorney fees and expenses to the extent they arise from NBBJ's negligent acts or omissions in the performance of its services.

14. In early 2011, an outbreak of Legionella occurred on the premises of the newly constructed Heart Patient Tower. By 2012, multiple lawsuits were filed against [PHP], [MVH], and other defendants (including NBBJ) alleging personal injury claims. These lawsuits have been consolidated in this Court under Case No. 2012 CV 01016, styled as *Evelyn*

*Amos, et al. v.* [*MVH*] (the "Legionella litigation").

15. On multiple occasions, [MVH] tendered its defense of the Legionella litigation to NBBJ. NBBJ refused to respond to [MVH's] tender and, therefore has effectively rejected the same.

16. In addition, Zurich American Insurance Company ("Zurich"), on behalf of [MVH] as Zurich's additional insured, tendered the defense of [MVH] to NBBJ. NBBJ expressly rejected Zurich's tender.

17. To date, NBBJ refuses to provide a defense to [MVH] in the Legionella litigation. NBBJ has not come forward with any insurance policy on which [MVH] was included as an additional insured and which covers the alleged damages of the personal injury claims pled in the Legionella litigation.

Plaintiffs asserted that "NBBJ failed to obtain a commercial general liability policy for bodily injury sufficient to meet the requirements of the Contract and therefore, is in breach of contract," and that "NBBJ failed to include [MVH] as an additional insured under its commercial general liability policy in breach of the Contract." According to Plaintiffs, "a dispute has arisen between Plaintiffs and Defendant regarding their rights, duties, obligations and compensation * * * requiring a declaration by this Court for its resolution." Plaintiffs also asserted that the "actions and/or conduct of NBBJ as pled herein, including but not limited to, NBBJ's failure to obtain an insurance policy which meets the requirements of the Contract, constitute the complete and/or partial failure to perform the obligations under the Contract in consideration for [MVH's] complete performance." Finally, Plaintiffs asserted

an alternative claim for breach of contract against NBBJ as follows:

> The actions and/or conduct of NBBJ as pled herein, including but not limited to, its failure to include [MVH] as an additional insured under its commercial general liability insurance policy and/or its failure to provide a defense to [MVH] in the Legionella litigation and/or its failure to indemnify and hold harmless [MVH], constitute the complete and/or partial failure to perform the obligations under the Contract in consideration for [MVH's] complete performance.

A copy of the Contract is attached to the complaint.

{¶ 3}   On July 11, 2013, the Cincinnati Insurance Company ("CIC") filed a Motion to Intervene.   According to the motion, "TP Mechanical was a subcontractor of the general contractor with regard to the construction of the Heart Tower at MVH.   Pursuant to its contract with the general contractor, TP Mechanical was obligated to provide specified insurance coverage to MVH as an additional insured. * * * MVH claims that CIC owes it a duty to defend and indemnify under this Policy."   CIC asserted that "intervention is sought to allow CIC to file an Intervening Complaint: (1) against NBBJ seeking a declaration that NBBJ is obligated to defend (and potentially indemnify) CIC's additional insured [MVH] and (2) seeking a declaration as to the extent, if any, of CIC's obligation to defend and/or indemnify MVH and [PHP] in the underlying Legionella Litigation." On July 25, 2013, NBBJ filed a memorandum contra to the motion to intervene, asserting that intervention "as to the Legionella Litigation is res judicata," that "CIC's action is solely in contract law, not in tort or negligence," and that CIC "lacks privity of contract with NBBJ, and therefore

CIC's proposed pleadings fail to state a claim as a matter of law * * *." On August 1, 2013, CIC filed a reply in support of its motion, and on August 5, 2013, Plaintiffs filed a reply in support of CIC's motion.

{¶ 4} On July 24, 2013, NBBJ filed an answer and counterclaim, asserting a claim of breach of contract against "[PHP] dba [MVH]". On August 6, 2013, NBBJ filed a response to Plaintiffs' reply in support of CIC's motion to intervene. On August 12, 2013, the trial court sustained CIC's motion to intervene, and on August 15, 2013, CIC filed its intervening complaint.

{¶ 5} Plaintiffs filed their motion for summary judgment on November 26, 2013. Attached to the motion is a copy of the Contract (Exhibit 1), the affidavit of Dale Creech (Exhibit 2), "NBBJ's Responses to [Plaintiffs'] Requests for Admissions Directed to Defendant NBBJ, LLC," (Exhibit 3), and "NBBJ's Response to [Plaintiffs'] First Set of Interrogatories and First Requests for the Production of Documents Directed to Defendant NBBJ, LLC" (Exhibit 4). Additional Exhibits to the motion were filed under seal. Creech's affidavit provides in part as follows:

1. I am an adult of sound mind and body and have personal knowledge of the facts set forth in this affidavit.

2. I am Vice President and Chief Legal Officer of Premier Health, fka Premier Health Partners, and have been involved in the creation, organization and operation of Premier Health since its inception in 1995. As such, I have independent, personal knowledge of Premier Heath, as well as its co-corporate relationship with Miami Valley Hospital (MVH).

3. Premier Health functions solely as a business operating company for MVH. Premier Health is a non-voting, co-corporate member of MVH for business functions such as budgets, capital spending, managed care contracts, strategic planning, and the like.

4. A true and accurate copy of the May 29, 2007 Contract between Premier Health Partners dba Miami Valley Hospital and NBBJ, LLC is attached as Exhibit 1 to Plaintiffs' Motion for Summary Judgment in this case (the "Contract").

5. In the context of the Contract, Premier Health was doing business for MVH when it entered into the Contract. The Contract involved services NBBJ was to provide, as Architect, relative to new construction located on MVH's main campus known as the Heart Patient Tower.

6. * * * NBBJ hired Korda/Nemeth Engineering and Korda/Nemeth Engineering designed the plumbing of the Heart Patient Tower.

* * *

8. In February 2011, MVH became aware that there were several patients admitted to the Heart Patient Tower that had Legionnaire's disease and later, MVH confirmed Legionella was present in the Heart Patient Tower.

* * *

10. MVH tendered its defense of the Legionella Litigation to the entities it hired to provide design, construction, and contract services relative to the Tower, including the general contractor (Skanska-Shook, JV), the

plumbing subcontractor (TP Mechanical Contractors) and the architect (NBBJ) involved in the design and construction.

11. The same or similar "additional insured" provision at issue in this case also existed in the contracts with Skanska-Shook and TP Mechanical. The insurers of Skanska-Shook and TP Mechanical, Cincinnati Insurance Company and Zurich Insurance, along with the hospital are currently sharing in the cost of the hospital's defense of the Legionella Litigation. These entities have also contributed towards settlements. NBBJ has refused to pay for a portion of MVH's defense, or to indemnify MVH, or to even contribute to settlements.

**{¶ 6}** Exhibit 4 reflects that NBBJ responded in part to Plaintiffs' first set of interrogatories and requests for the production of documents in relevant part as follows:

* * *

9. Identify all insurance policies you obtained to provide coverage to NBBJ relative to the Heart Tower Project on [MVH's] campus.

ANSWER: Chubb & Son a division of Federal Insurance Company, Policy No. 3538-97-83 / 04

10. For each policy identified above, please state:

* * *

g) the named insureds on this insurance policy.

ANSWER: See Document Request production, including the letter of January 11, 2013 with attached Endorsement, and the electronic copy of the Policy itself.

**{¶ 7}** Plaintiffs asserted that NBBJ was obligated to obtain sufficient insurance to

meet the requirements of section 12.10.1 of the Contract and failed to do so. The motion provides that it "is anticipated NBBJ will argue that it did obtain a commercial general liability policy which included MVH as an additional insured, but the policy contains an exclusion for bodily injury caused by a biological agent or bacteria and therefore, there is no coverage for the Legionella litigation. Section 12.10.1 of the Contract provision provides no words of limitation regarding bodily injury." Plaintiffs asserted that "the insurance obtained by NBBJ which includes the exclusion for injury caused by bacteria does not meet the requirements of Section 12.10.1 of the Contract. MVH is entitled to insurance for bodily injury, yet, NBBJ has failed to provide that insurance as promised." The motion further provides that "Plaintiffs anticipate NBBJ will argue that whether or not MVH is entitled to a defense and indemnity depends on a determination of negligence. This is incorrect. The insurance coverage was to be provided *regardless* of negligence and there is no requirement that NBBJ or MVH's alleged negligence be determined before Section 12.10.1 of the Contract applies." Finally, Plaintiffs asserted that NBBJ's refusal to provide a defense and indemnity to MVH "is a breach of contract," and that the trial court "should enforce the Contract between the parties and NBBJ should be ordered to pay MVH's defense costs, as well as indemnification, in the underlying matter."

{¶ 8} On January 24, 2014, "Defendant NBBJ's Cross-Motion for Summary Judgment and Memo Contra Plaintiffs' Motion for Summary Judgment" was filed. NBBJ asserted therein that "NBBJ's contract with [PHP] expressly excepts liability for the underlying Legionella causes," and that "NBBJ did not enter into a contract with Plaintiff [MVH]." NBBJ further asserted that it is "not liable to insure the negligence of Plaintiffs'

construction contractors." NBBJ asserted that it is entitled to PHP's indemnification. NBBJ attached multiple exhibits to it cross-motion that were filed under seal.

{¶ 9} On February 7, 2014, Plaintiffs responded to NBBJ's cross-motion for summary judgment, also filing, under seal, an authenticated copy of the Chubb Policy that NBBJ produced in discovery. On February 18, 2014, NBBJ filed a reply.

{¶ 10} On March 7, 2014, the "Motion of Zurich American Insurance Company to Intervene and to Amend Scheduling Order" was filed, Plaintiffs responded on March 14, 2014, and a Reply was filed on March 20, 2014.

{¶ 11} In sustaining Plaintiffs' motion for summary judgment, the trial court determined in part as follows:

* * *

The Court finds that there is a real justiciable controversy between Plaintiffs and NBBJ based upon the Contract. Plaintiffs assert that they are incurring and continuing to incur defense costs in the Legionella Litigation and seek speedy relief for the determination of their rights. Thus, this declaratory judgment action is appropriately before the Court.

* * *

At the outset, NBBJ asserts that it did not enter in a contract with MVH but with PHP only. The Court rejects this proposition. Effective May 29, 2007, PHP dba MVH, identified as "Owner" entered into a contract with NBBJ, identified as "Architect" relating to the project known as the Heart Patient Tower. In support of their Motion for Summary Judgment, Plaintiffs

provided the affidavit of Dale Creech, Vice President and Chief Legal Officer of PHP, who stated that PHP was doing business for MVH when it entered into the Contract with NBBJ. Creech Aff. ¶5. Moreover, NBBJ acknowledged that it entered into a contract with MVH and was contractually obligated to name MVH as an additional insured. * * * Plaintiffs' Ex. 7 contains a series of letters including a letter dated January 11, 2013 from counsel for NBBJ to counsel for Plaintiffs. This letter indicates that NBBJ contracted with MVH and that it met its contractual requirement to name MVH as a named insured. The fact that MVH was an additional insured on the Chubb Policy shows NBBJ knew they were entering into a contract with MVH. Thus, NBBJ entered into a contract with PHP and MVH.

Article 12.9 of the Contract states that "[NBBJ] shall indemnify and hold Owner and its officers, employees and successors harmless from and against all damages, losses, and judgments, including reasonable attorneys' fees and expenses to the extent they arise from [NBBJ's] negligent acts or omissions in the performance of its services and for patent, copyright or trademark infringement attributable to [NBBJ's] services."

Article 12.10.1 states that throughout the entire period of performance by Architect, Architect shall maintain, the following minimum insurance:

> Comprehensive General Liability - Architect shall maintain a policy of commercial general liability insurance with Policy limits not less than $1,000,000 each occurrence

and $2,000,000 aggregate for bodily injury and damage to property. Owner is to be included under such policy as additional insured to the extent of contractual liability assumed by Architect. The policy shall contain a severability of interest provision in favor of the additional insureds.

Plaintiffs assert that although NBBJ obtained a commercial general liability policy which included MVH as an additional insured, the policy contained an exclusion for bodily injury caused by biological agents or bacteria and thus, NBBJ is in breach of contract for not providing a comprehensive insurance policy. NBBJ argues that the insurance policy it procured which excludes the effects of "biological agents" was consistent with a "pollution" exclusion in the Contract and relies on Article 9.8 to support its position. The Article states: "Unless otherwise provided in this Agreement, the Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials or toxic substances in any form at the Project site."

The Court finds that NBBJ was required to provide MVH a commercial general liability policy for bodily injury and damage to property arising from the negligence of NBBJ. The Court concludes that the "Pollution" exclusion in the Contract does not permit NBBJ to procure an insurance policy covering its negligence with an exclusion for "Biological Agents." The Chubb Policy's "Biological Agents" exclusion provides that

"this insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of biological agents." * * * "Biological agents" means "any bacteria, mildew, mold or other fungi, other microorganisms, or mycotoxins, spores, or other by-products of any of the foregoing, viruses or other pathogens, or colony or group of any of the foregoing." * * *

The Contract does not define the terms "hazardous materials" or "toxic waste" as used in Article 9.8, the "Pollution" exclusion. The Court will only apply the plain and ordinary meaning of these terms.

"Hazardous materials" commonly known as "hazmat" is defined as "a material that would be a danger to life or to the environment if released without precautions." Merriam-Webster's Dictionary, www.merriam-webster.com/dictionary/hazmat (accessed March 14, 2014.)

"Toxic waste" is defined as "industrial or chemical waste products that are harmful to the environment." MacMillan Dictionary, *toxic waste definition,* www.macmillandictionary.com/us/dictionary/american/toxic-waste (accessed March 14, 2014.)

The Court concludes that the "Pollution" exclusion in the Contract is separate and distinct from the "Biological Agents" exclusion found in the Chubb Policy. NBBJ contracted with PHP and MVH and promised to provide a commercial general liability insurance policy for bodily injury to

the extent NBBJ would be liable for the injury. Bodily injury caused by "Biological Agents" as defined in the Chubb Policy is within the scope of insurance coverage that NBBJ promised to provide Plaintiffs in the Contract. Only bodily injury resulting from hazardous materials or toxic waste as provided in Article 9.8 of the Contract was outside the requirement of NBBJ procuring insurance coverage.

Chubb, the insurance provider NBBJ enlisted to provide insurance coverage as required under the Contract refused to provide a defense and indemnification based upon the "Biological Agents" exclusion. Interestingly, the Chubb Policy provides an exclusion for pollution which is separate from the "Biological Agents" exclusion. * * * Had NBBJ fulfilled its obligation under the Contract to provide Plaintiffs with a compressive (sic) general liability policy, Plaintiffs would have the benefit of a defense and potential indemnification from Chubb for claims arising from the negligence of NBBJ. NBBJ failed to provide this insurance and is in breach of Contract. Therefore, the Court finds NBBJ is in breach of contract for its failure to provide comprehensive insurance coverage to Plaintiffs for claims of bodily injury occasioned by NBBJ's negligence pursuant to Article 12.10.1 of the Contract.

{¶ 12} Finally, the court concluded that the "amount of damages resulting from NBBJ's duty to provide Plaintiffs with a defense and duty to indemnify Plaintiffs cannot be determined until the underlying Legionella Litigation is completed."

{¶ 13}  We note that the court's docket reflects that the trial court sustained Zurich American Insurance Company's Motion to Intervene on March 26, 2014, and that on September 2, 2014, the court stayed the matter below pending this Court's decision herein.

{¶ 14}  NBBJ asserts one assignment of error herein as follows:

THE TRIAL COURT ERRED PROCEDURALLY BY WEIGHING NBBJ'S EVIDENCE IN SUPPORT OF AFFIRMATIVE DEFENSES, WITHOUT TESTING AT TRIAL GENUINE ISSUES OF MATERIAL FACT ON PLAINTIFFS' CLAIMS IN THE FIRST INSTANCE, AND IN THE ABSENCE OF REBUTTAL EVIDENCE TO NBBJ'S PROVEN AFFIRMATIVE DEFENSES.

{¶ 15}  Plaintiffs respond that "[t]his is a straightforward breach of contract and declaratory judgment action where the material facts are not disputed.  The terms of the contract are clear and unambiguous, making this case appropriate for summary judgment." We agree with Plaintiffs.

{¶ 16}  "A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations. * * * ."  *Mid-American Fire & Casualty Co. v. Heasley* , 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 8. R.C. 2721.03 governs declaratory judgment actions. This statute provides in part:

Subject to division (B) of section 2721.02 of the Revised Code, any person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in

section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

**{¶ 17}** R.C. 2721.12(A) further provides: "* * * [W]hen declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding." "This section and its predecessor have been interpreted as requiring that 'a real justiciable controversy exists between adverse parties, and speedy relief is necessary to the preservation of rights which may otherwise be impaired or lost.'" (Citation omitted). *Cincinnati Ins. Co. v. Consol. Equip. Co.*, 2d Dist. No. 19390, 2003-Ohio-47, ¶ 9.

**{¶ 18}** As this Court recently noted:

When reviewing a summary judgment, an appellate court conducts a de novo review. *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Harris v. Dayton Power & Light Co.*, 2d Dist. Montgomery No. 25636, 2013-Ohio-5234, ¶ 11 (quoting *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997) (citing *Dupler v. Mansfield Journal Co .*, 64 Ohio St.2d 116, 413 N.E.2d 1187

(1980)). Therefore, the trial court's decision is not granted any deference by the reviewing appellate court. *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

Civ. R. 56 defines the standard to be applied when determining whether a summary judgment should be granted. *Todd Dev. Co., Inc. v. Morgan*, 116 Ohio St.3d 461, 463, 880 N.E.2d 88 (2008). Summary judgment is proper when the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the Motion for Summary Judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Fortune v. Fortune*, 2d Dist. Greene No. 90-CA-96, 1991 WL 70721, *1 (May 3, 1991) (quoting *Harless v. Willis Day Warehouse Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 45 (1978)). The initial burden is on the moving party to show that there is no genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93, 662 N.E.2d 264 (1996). Once a moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dotson v. Freight Rite, Inc.*, 2d Dist. Montgomery No. 25495, 2013-Ohio-3272, ¶ 41 (citation omitted).

*Cincinnati Ins. Co. v. Greenmont Mut. Hous. Corp.*, 2d Dist. Montgomery No. 25830, 2014-Ohio-1973, ¶ 17-18.

{¶ 19} "Generally, a breach of contract action is pleaded by stating (1) the terms of

the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration. * * *." *Am. Sales, Inc. v. Boffo*, 71 Ohio App. 3d 168, 175, 593 N.E.2d 316 (2d Dist.1991).   As the Supreme Court of Ohio has noted:

> When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties. We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract. In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

*Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶ 37.

{¶ 20}   In its brief, NBBJ initially asserts, "Who are parties to the NBBJ Agreement constitutes a significant material issue for trial."   The Contract expressly provides as follows:

> AGREEMENT * * * <u>effective</u> as of the <u>29th</u> day of <u>May</u> in the year <u>2007</u>
> * * *
> BETWEEN the Architect's client identified as the Owner:
> * * *
> <u>Premier Health Partners, dba</u>
> <u>Miami Valley Hospital</u>
> <u>40 West 4th Street</u>
> <u>Dayton, Ohio 45402</u>

and the Architect:
\* \* \*
NBBJ LLC
1555 Lake Shore Drive
Columbus, Ohio 43204

**{¶ 21}** The Contract is signed, on behalf of the Owner, by "Eloise P. Broner, FACHE." NBBJ asserts that the Contract is "signed only by a representative of Premier, working at Premier's office street address, the address stated in the Contract." NBBJ further directs our attention to Paragraph 9.7 of the Contract, which provides that "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either Owner or Architect." According to NBBJ, this "provision expressly excludes [MVH]." NBBJ asserts that each "corporation appears as a separate Plaintiff in the Complaint against NBBJ," and that it "had no notice of two parties to the Contract."

**{¶ 22}** NBBJ further asserts as follows:

Not satisfied with the defense by two insurers, [PHP] and [MVH] sought for NBBJ to defend them also, notwithstanding the absence of a malpractice claim, no colorable liability for the underlying construction, nor any language "to defend" in the NBBJ Agreement.

The duty to defend arises purely as a contractual term, absent in this case. Nothing in Premier's agreement with NBBJ requires <u>defense</u> against claims as part of indemnification. Premier and MVH "Admit that nothing in the Contract expressly uses the word 'defend' in reference to either parties' duties."

An important distinction is the difference in the NBBJ Agreement between the two types of coverage, Professional Liability (design malpractice,) and Comprehensive General Liability (non-malpractice.) Neither Premier nor [MVH] filed <u>any</u> liability claim against NBBJ, either for professional design malpractice or for negligence. Therefore, Professional Liability (design malpractice) insurance, indemnification, or defense are not at issue.

Finally, NBBJ asserts that it "procured CGL insurance as required by its contract."

{¶ 23} We note that the trial court initially determined that NBBJ entered into a contract with both MVH and PHP, in reliance in part on the affidavit of Dale Creech, the Vice President and Chief Legal Officer of Premier Health, fka PHP, who attested to the Plaintiffs' "co-corporate relationship." The January 11, 2013 correspondence between counsel for NBBJ and counsel for Plaintiffs, upon which the trial court additionally relied, is before us, and we have examined it. Having done so, we agree with the trial court's conclusion that "NBBJ acknowledged that it entered into a contract with MVH and was contractually obligated to name MVH as an additional insured." We note that NBBJ specifically cited the January 11, 2013 correspondence in its response to Plaintiffs' interrogatory, quoted above, which in part requested that NBBJ identify the named insureds on the Chubb Policy. We further agree with the trial court that the "fact that MVH was an additional insured on the Chubb Policy shows that NBBJ knew they were entering into a contract with MVH, thus, NBBJ entered into a contract with PHP and MVH."

{¶ 24} Having concluded that MVH is a party to the Contract, we must next

determine if genuine issues of material fact exist regarding whether or not NBBJ breached its contractual obligation to provide comprehensive general liability insurance .  We agree with the trial court's determination that "[b]odily injury caused by 'Biological Agents' as defined in the Chubb Policy is within the scope of insurance coverage that NBBJ promised to provide Plaintiffs in the Contract.  Only bodily injury resulting from hazardous materials or toxic waste as provided in Article 9.8 of the Contract was outside the requirement of NBBJ procuring insurance coverage."  As the trial court noted, and pursuant to Article 12.10.1, NBBJ was required to provide comprehensive general liability insurance "for bodily injury * * * to the extent of contractual liability assumed by [NBBJ]."  Article 9.8 of the Contract provides that NBBJ "shall have no responsibility for the discovery, presence, handling, removal or disposal of or exposure of persons to hazardous materials or toxic substances in any form at the Project site." While the trial court defined "toxic waste," as opposed to "toxic substances," in the course of its analysis, we agree with the court's conclusion that Article 9.8 "does not permit NBBJ to procure an insurance policy covering its negligence with an exclusion for 'Biological Agents.'" While the Contract anticipates "hazardous materials and toxic substances" at the Project site, we agree with the trial court that Article 9.8 is "separate and distinct" from the "Biological Agents" exclusion in the Chubb Policy.  In other words, the "Biological Agents" exclusion is inconsistent with the terms of the Contract and accordingly in breach thereof; the Contract is silent regarding biological agents and their effects. In our view, the "hazardous materials and toxic substances" in Article 9.8 constitute materials and substances of a non-biological nature. The "Biological Agents" exclusion encompasses an organic type of agent, such as bacteria,

and its effects. The plain meaning of "biological" is "of or relating to biology or to life and living processes." Merriam-Webster's Dictionary, http://www.merriam-webster.com/dictionary/biological (Accessed Dec. 5, 2014). We agree with Plaintiffs that MVH did not contract for insurance coverage for bodily injury, with the exclusion of injuries caused by biological agents, and that the "Biological Agents" exclusion in the policy modified the coverage NBBJ contracted to provide in Article 12.10.1 of the Contract. For the foregoing reasons, we conclude that the effect of biological agents at the Project site was within the scope of contractual liability assumed by NBBJ. We further conclude that NBBJ is in breach of contract for procuring a policy with the "Biological Agents" exclusion. Accordingly, we conclude that no genuine issue of material fact remains, and that Plaintiffs are entitled to summary judgment as a matter of law. NBBJ's sole assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Neil F. Freund
Shannon K. Bockelman
Luther L. Liggett, Jr.
David M. Scott
Kimberly A. Kyle
Hon. Michael W. Krumholtz