PER CURIAM.
¶1 Konecranes, Inc., Brian Angelroth, and Michael Carroll (collectively, "Konecranes") appeal from judgments of the circuit court, entered on orders following a jury's verdict, against Konecranes in favor of plaintiff Bradley Moore and third-party defendant Badger Alloys, Inc. Konecranes contends the circuit court erred when it partially denied Konecranes' motion for summary judgment, which had asserted, among other things, that Badger had breached its contractual duties to defend and indemnify Konecranes. The circuit court had concluded that any duty was contingent upon the allocation of liability, and that there was "a genuine factual dispute as to whether Konecranes' liability in any way arises out of the acts or omissions of Badger Alloys[.]" We conclude that there was no duty to defend under the contract in question and that the circuit court properly determined that the duty to indemnify was contingent. The circuit court therefore properly denied the motion for summary judgment in part, so we affirm the judgments.
BACKGROUND
¶2 The facts of this case are fairly straightforward and largely undisputed by the parties. Konecranes provides lifting services for industrial cranes, port equipment, and machine tools. Badger is a sand foundry. Moore is a Badger employee. Angelroth and Carroll are Konecranes employees.
¶3 In 2012, Badger needed to extend runway railing for an overhead crane. Konecranes submitted the winning bid. Moore prepared purchase orders for the project and sent them to Konecranes. Konecranes returned a service quote that indicated the terms and price of the services to be provided. The service quoted indicated that it was subject to Konecranes' "Standard Terms and Conditions of Sale." The Standard Terms document includes an indemnity clause in which the buyer (here, Badger) agrees to indemnify Konecranes as follows:
Konecranes shall not be liable for and buyer shall release, indemnify and hold Konecranes, or any entity affiliated in any way therewith, harmless from any claims, demands, damages regardless of their type including, but not limited to, direct, consequential, incidental, punitive or special, accounts, grievances, losses and expenses, whether known or unknown, present or future, any and all liability, of and from any and all manner of actions, cause(s) of actions, any suits in law, in equity, or under statute, state or federal, or whatever kind of nature, third party actions, including suits for contribution and/or indemnity on account of or in any way arising out of acts or omissions of the buyer, its agents or employees and relating in any way to the goods and/or services provided under the quotation or the equipment related thereto, including, but not limited to buyer's use, installation, incorporation or selection thereof and causes (for inspection services): (I) outside of the scope of the inspection as identified in paragraph 11,a. hereof, (II) any condition that occurs following the crane's use after an inspection as identified in paragraph 11,b. hereof, (III) failure of buyer to repair or replace any defective crane or component as identified in paragraph 11,c. hereof or any other cause identified herein or that may be responsibly inferred herefrom except to the extent caused by the sole negligence of Konecranes.
(Boldface and all-caps format omitted.)
¶4 On June 25, 2012, Konecranes brought a steel beam into the Badger foundry on a pair of forklifts operated by Carroll and another Konecranes employee. Angelroth was the project's "lead man." C-clamps strapped either end of the beam to the forklifts. Once the beam was in the foundry, but before it was lowered to the ground, Moore approached the beam so he could talk to Angelroth about the next day's activities. Carroll's forklift began to backup because he was distracted by Moore's presence on the foundry floor. Because the beam was still connected to the forklift, the backwards motion of the forklift caused the beam to fall onto Moore's foot.
¶5 Moore filed the underlying action in September 2014, alleging his injuries were caused by the negligence of Konecranes' employees, Angelroth and Carroll. In January 2015, Konecranes tendered the claim to Badger, which refused to indemnify Konecranes or contribute to the cost of Konecranes' defense. In March 2015, Konecranes, as a third-party plaintiff, sued Badger, seeking contribution or indemnification.
¶6 In January 2016, Konecranes moved for partial summary judgment, seeking determinations that Badger had a duty to defend Konecranes, that Badger had breached the duty to defend, and that Badger was liable for Konecranes' attorney fees both for defending against Moore's claim and for establishing Badger's duties and breaches. The circuit court concluded that there was a valid contract between Konecranes and Badger, and that the contract included a duty of Badger "to indemnify Konecranes for liability which in any way arises out of the acts or omissions of Badger Alloys, its agents or its employees[.]" The circuit court also concluded that the contract "is sufficient to require Badger Alloys to pay the attorney's fees and costs which Konecranes incurs defending the claims asserted in the above-captioned action, as well as the attorney's fees and costs which Konecranes incurs establishing that Badger Alloys owes a duty to indemnify and/or defend Konecranes."[1]
¶7 However, the circuit court denied summary judgment in part because it concluded "[t]here is a genuine factual dispute as to whether Konecranes' liability in any way arises out of the acts or omissions of Badger Alloys." As it explained at the summary judgment hearing:
Konecranes has argued in addition to indemnification that the clause creates a duty to defend. Terms and conditions contain a choice of law provision stating that the document is to be construed according to the laws of the State of Ohio.
....
In this case, the indemnification clause provides that Badger Alloys will indemnify Konecranes, quote, from any claims, demands, damages, regardless of their type, including but not limited to losses and expenses. This language the Court finds is sufficient under Ohio law to create a duty for Badger Alloys to indemnify Konecranes from attorneys fees and costs in this action.
The Court, however, does not see any authority through Konecranes by which the Court can rule that a duty to indemnify from attorney fees is co-extensive with the duty to defend. The Court declines to make such a ruling.
Also, Konecranes does not provide the Court with sufficient evidence to establish a prima facia [sic] case that Badger Alloys breached its duty to indemnify or that it is liable for all Konecrane's [sic] legal fees. Although the indemnity clause is valid and enforceable, Court does not believe it becomes operable until it can be established that Plaintiff's claims arose in any way out of his own acts or omissions or those of Badger Alloys.
....
Motion is denied to the extent there are -- there is no duty to defend, and there is a genuine dispute of material fact as to whether the Plaintiff's claims arose out of his own negligence.
¶8 The matter then proceeded to a jury trial. The jury determined that Konecranes, by its employees, was negligent, and this negligence was a cause of Moore's injuries; Moore was negligent, but that negligence was not a cause of his injuries; and Badger was not negligent. In other words, the jury determined that Moore's injuries were caused by the sole negligence of Konecranes. Moore was awarded a total of $699,355.65 against Konecranes. Badger was authorized to recover $5128.41 in costs from Konecranes as the prevailing party on the third-party complaint. Konecranes appeals.
DISCUSSION
¶9 The circuit court concluded that the contract had a valid choice of law provision requiring the court to apply Ohio law to this case.[2] The parties do not dispute the application of Ohio law, and the rules for summary judgment review and contract interpretation in Ohio are similar to our own.
¶10 "Appellate review of a summary judgment is de novo, employing the same standard as the trial courts." See Allen v. Fifth Third Bank , 6th Dist. Lucas No. L-13-1143, 2014-Ohio-1293, ¶6.[3] Summary judgment is appropriate when the trial court finds that there is no genuine issue as to any material fact; that the moving party is entitled to judgment as a matter of law; and that reasonable minds can reach only one conclusion, which is adverse to the party against whom summary judgment is sought. See Premier Health Partners v. NBBJ, LLC , 2nd Dist. Montgomery No. 26143, 2015-Ohio-128, ¶18.[4]
¶11 "Indemnity agreements are interpreted in the same manner as other contracts[.]" Allen , 2014-Ohio-1293, ¶11.[5] When interpreting a contract, the court's role "is to give effect to the intent of the parties." See Premier Health , 2015-Ohio-128,¶19 (quoting Sunoco, Inc. (R&M) v. Toledo Edison Co. , 129 Ohio St.3d 397, 2011-Ohio-2720, 953 N.E.2d 285, ¶37 ).[6] We examine the contract as a whole and presume the parties' intent is reflected in the contract's language. See id. "[W]e will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." Id. (citation omitted). When the written contract's language is clear, we do not look beyond the writing itself to find the parties' intent. See id.
¶12 The indemnification clause, despite being a single run-on sentence, can be distilled, quite simply, to state, "Konecranes shall not be liable for and [Badger] shall release, indemnify and hold Konecranes ... harmless from any claims, demands, damages ... or any other cause identified herein or that may be responsibly inferred herefrom except to the extent caused by the sole negligence of Konecranes. " (Emphasis added.) As the circuit court determined, this suffices as an indemnification agreement, but there is simply no express indication of any duty to defend. The circuit court thus denied Konecranes' motion for summary judgment because it concluded that (1) the indemnification agreement does not include a duty to defend and (2) the agreement makes indemnification conditional on apportionment of liability-that is, Konecranes' negligence cannot have been the sole cause of the damages for which it seeks indemnification. Konecranes disputes the circuit court's reasoning on these points.
A. Duty to Defend
¶13 Denying a motion for reconsideration, the circuit court explained that, relative to its finding that there was no duty to defend, it had found Rayco Manufacturing, Inc. v. Beard Equipment Co. , 9th Dist. Wayne, No. 11CA0057, 2014-Ohio-970, to be persuasive. Konecranes contends that it was improper for the circuit court to rely on that case, because the choice of law provision in the Standard Terms agreement requires the court to apply the law of Clark County, Ohio, which is in the Second Appellate District, and Rayco was decided by the Ninth Appellate District. Konecranes instead relies on Premier Health to argue that an indemnification agreement need not expressly reference a duty to defend for such a duty to be found. Konecranes also argues that, under Ohio's pleading rule, the allegations in the pleadings themselves can trigger a duty.
¶14 First, we do not agree with Konecranes' reading of the choice of law provision. The first sentence of the choice of law provision states, "Any controversy arising out of or related to these Terms ... or any contract between KONECRANES and [Badger] shall be construed and governed by the laws of the State of Ohio[.]" The sentence does not require the application of the law of any particular appellate district.
¶15 The remaining two sentences of the choice of law provision state:
Any action arising from or related to these Terms ... or any contract between KONECRANES and [Badger] shall be instituted and litigated in any state court located in Clark County, Ohio, or in any federal court with jurisdiction over Clark County, Ohio. KONECRANES and [Badger] hereby irrevocably consent to the jurisdiction of the courts of Clark County, Ohio.
These latter two sentences, however, say nothing about the application of any particular law; rather, they are merely venue provisions that supposedly obligate the parties to litigate their disputes in Clark County, Ohio. Certainly, had this matter been brought in Clark County, Ohio, then the law of that appellate district would apply. But we are not in Clark County, Ohio, and the parties' contract requires only that we must apply "the laws of the State of Ohio." We therefore rely on that Ohio law which we find most persuasive.
¶16 Second, we find Rayco more persuasive and on point than Premier Health . The parties in Rayco were Rayco, an Ohio corporation that manufactures and sells equipment used in forestry and landscaping, and Beard, a Florida corporation that sells and services equipment, including equipment manufactured by Rayco. See id. , 2014-Ohio-970, ¶2. The parties entered a dealership agreement in which each agreed "to save, indemnify and hold harmless" the other under certain circumstances. See id. If both parties' actions contributed to a claim, each party would bear its own damages and costs. See id.
¶17 Beard sold a Rayco forestry mower to a buyer in Alabama, who later filed suit against both Beard and Rayco for a defective mower. See id. , ¶3. Rayco filed a complaint against Beard in Ohio, asserting Beard had a contractual obligation to indemnify it in Alabama. See id. , ¶4. Beard answered and filed a motion to dismiss, asserting that Rayco's claims were not yet ripe-there had been no determination of liability or damages yet in Alabama-and the terms of the dealership agreement included no duty to defend. See id. , ¶¶5-6. Beard also argued that indemnification would not be triggered before liability was determined. See id. , ¶6.
¶18 Rayco essentially mirrors this case. There, as here, "the plain language of the parties' agreement does not impose an express duty to defend." See id. , ¶24. "This situation is not analogous to situations involving insurance companies in which the insurance company has an inherent duty to defend the insured." Id. , ¶25. Rather, "the purpose of an indemnification provision is to protect one party or both from liability for the negligent acts of the other, and the parties are free to negotiate the terms and limitations of the indemnification as they may agree." Id. Here, as in Rayco , the parties simply "did not expressly contract to provide a defense for one another." See id.
¶19 Relying on Premier Health , Konecranes counters that an indemnification agreement "need not incorporate the word 'defend' in order to impose a defense obligation." But Premier Health is distinguishable.
¶20 In 2007, Premier Health, doing business as Miami Valley Hospital, contracted with NBBJ for a "Heart Patient Tower" on the hospital campus. See id. , 2015-Ohio-128, ¶2. The contract required NBBJ to maintain a comprehensive commercial general liability policy and add the hospital as an additional insured. See id. The contract's indemnification clause specified that NBBJ would hold the hospital harmless for all damages "to the extent they arise from NBBJ's negligent acts or omissions in the performance of its services." Id. This indemnification clause did not include an express duty to defend.
¶21 In 2011, there was an outbreak of Legionella at the heart tower. Id. Multiple suits were filed against Premier Health, the hospital, and NBBJ. See id. NBBJ refused to provide a defense, so Premier Health and the hospital sued NBBJ for, among other things, breach of contract. See id. The circuit court granted summary judgment to Premier Health and the hospital based in part on the court's conclusion that the contract required NBBJ to procure a comprehensive commercial general liability insurance policy for Premier Health and the hospital for precisely this kind of occurrence, which NBBJ failed to do because the policy it did obtain included a "biological agents" exclusion. See id. , ¶11. Because NBBJ failed to procure the proper insurance, it was liable to Premier Health and the hospital for " 'damages resulting from NBBJ's duty to provide [Premier Health and the hospital] with a defense and duty to indemnify[.]' " See id. , ¶¶11-12.
¶22 On appeal, NBBJ argued that the duty to defend is contractual, and nothing in the contact required NBBJ to provide Premier with a defense. See id. , ¶22. The Court of Appeals, however, affirmed, noting that there was no genuine issue of material fact that NBBJ had breached its contractual obligation to provide a comprehensive insurance policy. See id. , ¶24. In other words, the Court of Appeals did not conclude there was a duty to defend because of anything it read into the indemnification clause or other part of the contract. Rather, NBBJ breached the contractual requirement to provide insurance coverage that would have provided Premier Health with a defense. See id. NBBJ was thus liable for the costs of the defense as damages for the breach of that obligation, not because NBBJ itself had a duty to defend. In short, any "duty to defend" in Premier Health , if there is one, arises from significantly different contractual obligations than the ones here. Premier Health is not instructive on the duty to defend.
B. Duty to Indemnify
¶23 Konecranes also relies on Allen v. Standard Oil Co. , 443 N.E.2d 497 (Ohio 1982) ("Standard Oil "), to argue that the duties to defend and indemnify can be triggered by the allegations in its complaint. But Standard Oil does not aid Konecranes' cause.
¶24 "For purposes of the pleading rule the question is whether the allegations contained in the complaint fall within the coverage of the [insurance] policy. The nature of the allegations determines whether an insurer is bound to defend." See id. at 499 (emphasis added). Needless to say, Konecranes' claim against Badger does not involve an insurance policy. Also, Standard Oil involved an agreement in which Refiners Transport & Terminal Corporation was required to "indemnify, save harmless, and defend " Standard Oil "except where the ... negligence of [Standard Oil] or third persons is the proximate cause of the accident." Id. at 498 (emphasis added). In other words, the parties' contract in Standard Oil expressly included a duty to defend. As noted above, the contract between Konecranes and Badger includes no such duty. Thus, Standard Oil is distinguishable from this matter at the outset.
¶25 Moreover, the Ohio Supreme Court recognized that even under the pleading rule,
Refiners' duty to indemnify [Standard Oil] did not unequivocally arise until it was determined that the separate intervening negligence of [Standard Oil] or third persons was not the proximate cause of the accident. Under the pleading rule it is irrelevant whether the insured is ultimately found to be liable, whereas under the instant indemnity provision the finding of liability vel non controls the parties' respective obligations. Thus, the pleading rule is inapposite because the parties predicated release from the duty to indemnify not on whether the complaint alleged negligence but on whether [Standard Oil] or third persons were in fact negligent.
Id. at 499-500.
¶26 If anything, then, Standard Oil supports the circuit court's partial denial of summary judgment in this case. Under the agreement in Standard Oil , Refiners had to indemnify Standard Oil unless Standard Oil's negligence or a third party's negligence was the proximate cause of the loss. Under the agreement in this case, Badger must indemnify Konecranes unless Konecranes' negligence is the sole cause of the loss. Thus, the duty to indemnify in this case is, like the duty to indemnify in Standard Oil , contingent on the actual allocation of liability rather than on simple allegations of liability, making the pleading rule inapposite.
C. Conclusion
¶27 Based upon the express terms of the contact between Konecranes and Badger, Badger has no duty to defend Konecranes because nothing in the indemnification agreement so specifies. The contract also provides that Konecranes is entitled to indemnification on claims "arising out of acts or omissions of the buyer ... except to the extent caused by the sole negligence of Konecranes." (Emphasis added.) Thus, because there was no duty to defend, and because the duty to indemnify was contingent on factual determinations of negligence and liability, we conclude the circuit court properly denied parts of Konecranes' request for summary judgment. Because the jury assigned all of the negligence in this case to Konecranes, Badger's indemnification obligation is not triggered, so Konecranes is not entitled to recover attorney's fees or costs from Badger.
By the Court. -Judgments affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

The circuit court, in its written order denying summary judgment, also said that it could not "conclude that Badger Alloys breached its duty to defend. " (Emphasis added.) These written references suggesting that Badger had a duty to defend appear to be erroneously included because, as will be noted in the main text, the circuit court expressly stated in its oral ruling that there is no duty to defend under the parties' contract.

We note the following about Ohio law. First, Ohio has twelve Court of Appeals districts but, unlike Wisconsin's unitary Court of Appeals, the decision of one Ohio appellate district is not binding on another. See Huntington Nat'l Bank v. Filippi , 3rd Dist. Union No. 14-15-03, 2015-Ohio-3096, ¶13 n.2 ; see also Cook v. Cook , 208 Wis. 2d 166, 186, 560 N.W.2d 246 (1997). Second, Ohio Court of Appeals decisions issued after May 1, 2002, "may be cited as legal authority and weighted as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published." See Rep.Op.R. 3.4 (Ohio 2012).

Cf. Palisades Collection LLC v. Kalal , 2010 WI App 38, ¶9, 324 Wis. 2d 180, 781 N.W.2d 503.

Cf. id. ("A party is entitled to summary judgment when there are no genuine issues of material fact and that party is entitled to judgment as a matter of law.").

Cf. Heritage Mut. Ins. Co. v. Truck Ins. Exch. , 184 Wis. 2d 247, 251-52, 516 N.W.2d 8 (Ct. App. 1994).

Cf. Ash Park, LLC v. Alexander & Bishop, Ltd. , 2014 WI App 87, ¶13, 356 Wis. 2d 249, 853 N.W.2d 618.