STATE OF MAINE
ANDROSCOGGIN, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-05

LISA OUELLETTE,

    Plaintiff/Appellee

vs.

JOHN NELSON,

    Defendant/Appellant

)
)
)
)
)
)
)
)
)
)
)
)

JAN 18 '23 AM11:18
ANDRO SUPERIOR COURT

DECISION ON MOTION
TO ENFORCE
SETTLEMENT AGREEMENT

Background and Facts.

Before the court is Plaintiff/Appellee Lisa Ouellette's (hereafter "Ouellette") motion to enforce settlement agreement with the Defendant/Appellant John Nelson (hereafter "Nelson"). This case is an appeal from a forcible entry and detainer matter in which at the District Court Ouellette prevailed and was granted possession of the property. Nelson appealed the decision and claims to hold title to the property.

On March 16, 2022, the parties attended their first judicial settlement conference. (Def.'s Opp., p. 2)[1]. At the March 16, 2022 settlement conference, an agreement was reached in which the litigation would be resolved by Ouellette transferring the property to Nelson in exchange for $42,500.00. (Id.). The purchase was to be consummated by Nelson making installment payments over a period of time unless it was determined that such a payment method would jeopardize Ouellette's public benefits. (Id.) This agreement was put on the record by Justice Mead. Justice

---

[1] In addition to the filings made by the parties, the court has listened to the audio recording from March 16, 2022 of Justice Mead's putting the settlement on the record, and also reviewed the transcript from the June 29, 2022 conference where Justice Mead again put on the record the status of the settlement.

1

Mead described it as a "conditional settlement", conditioned upon whether the settlement impacted Ouellette's public benefits, and if it was determined it did, the parties would reconvene the settlement conference.

It was determined that payments over time would jeopardize Ouellette's benefits, so the parties attended a follow-up settlement conference on June 29, 2022. (Id.). (Plt.'s Mot. ¶2, 3; Def.'s Opp., p. 3) At the June 29, 2022 conference, the parties agreed Nelson would make a lump sum payment of $42,500.00 in exchange for the property. Nelson believed he had financing lined up. (Id.) Justice Mead again put the agreement on the record, and indicated the closing was to occur by August 15, 2022. He further indicated the matter would be recessed, and if closing did not occur by August 15, the parties would reconvene.

After the June 29, 2022, conference, settlement documents were produced and exchanged. (Def.'s Opp., p.2.) Some objections to settlement language were raised. Otherwise however, the parties seemed to be working towards a closing of the transfer of the property. (Id.). In August, 2022, however, Nelson learned that the financing he contemplated was no longer available. (Plt.'s Mot., ¶6,7; Def.'s Opp., p.3). Therefore, the parties returned to another settlement conference, held September 22, 2022.

At the September 22, 2022 conference, objections to release language were discussed, but were largely resolvable. (Plt.'s Mot., ¶ 8.) It is not clear from the record what was discussed or agreed to, if anything, regarding Nelson's ability to obtain financing. On September 23, 2022, Ouellette's counsel sent a demand that closing of the transfer take place within two weeks. (Plt.'s Mot., ¶ 9) Closing did not occur and Nelson maintained he was unable to secure the necessary financing. (Def.'s Opp., p. 3.) On October 14, 2022, Ouellette filed the pending motion to enforce settlement agreement.

Standard of Review.

Settlement agreements are analyzed as contracts, and the existence of a binding settlement agreement is a question of fact. *Muther v. Broad Cove Shore Ass'n,* 2009 ME 37, ¶6. In order to be binding, a settlement agreement requires the mutual intent of the parties to be bound by terms sufficiently definite to enforce. Id., citing *Forrest Assocs. V. Passamaquoddy,* 2000 ME 195, ¶ 9. The establishment of a contract requires that the parties mutually assent to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties. *Forrest Assocs. V. Passamaquoddy,* 2000 ME 195, ¶ 9.

Discussion.

In deciding whether a contract or settlement agreement was reached, the court notes difficulty in discerning what the legal liabilities of the parties would be upon a breach. The settlement agreement, in its rawest terms, was a purported agreement for Ouellette to sell or transfer the disputed property to Nelson in exchange for payment by Nelson of $42,500.00. Ouellette is essentially asking the court to order Nelson to specifically perform on the contract. If viewed as a real estate purchase and sales agreement, and were Ouellette to have breached, a remedy available to Nelson could possibly be specific performance, due to the uniqueness of land. Horton and McGehee, *Maine Civil Remedies,* §6-5(a). But in a true real estate purchase agreement, specific performance is not typically a remedy available to the seller upon a breach by the buyer. Id. At §6-5(b)(1). Specific performance is not available as a remedy if a remedy at law is available. Id. At §6-2(a). When a buyer breaches on a real estate purchase agreement, the typical remedy is money damages for the difference between the contract price and the market value or actual sales price.

3

And if a buyer in fact is financially unable to make the purchase, impossibility is a defense to the remedy of specific performance as a court of equity will not order an impossible act. See *Ash Park, LLC v. Alexander & Bishop, Ltd.,* 2014 WI App 87, ¶ 17.

Of the view specific performance is not available, the larger question remains can the court otherwise discern what either party's legal liabilities are for a breach. In this instance, the court cannot determine what Nelson's liabilities are to Ouellette for a breach. The traditional remedy for the seller upon a breach by the buyer is the difference between the contract price and the market value or actual sales price. But this case arises as an eviction case in which Nelson is making a claim of title. There is no agreement that Ouellette owns 100% of the title or that she has the right and authority to sell the property to a third party. In short, it is impossible to determine what Nelson's liabilities are, and being unable to determine that, the court cannot find that a binding contract, or settlement agreement, exists upon which Nelson can be assessed damages for a breach of non-performance.

The order is:

Plaintiff/Appellee Lisa Ouellette's motion to enforce settlement agreement is DENIED. The matter is to be scheduled for Trial Management Conference at which a trial date will be set.

The clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ. P. 79(a).

Dated: January 18 , 2023

_____
Justice, Superior Court

4